Spencer v. Scovil.

cordance with the prayer of the petition; in all other respects the judgment is affirmed.

AFFIRMED IN PART.

---

ELLA C. SPENCER ET AL., APPELLANTS, V. CHARLES FORD SCOVIL ET AL., APPELLEES.*

FILED OCTOBER 7, 1903.  No. 12,996.

1. **Will: Devise: Construction.** A testator devised certain lands located in Nebraska, Missouri, Iowa and Dakota, to his daughter, M., her heirs and assigns forever, upon the condition that she should not alienate the lands in Nebraska until she attained the age of thirty-three; but that she might alienate the other lands with the consent of the testator's executors; and for the purposes of such alienation, appointed the mother of M. her guardian until M. reached the age of majority, clothing the guardian with full power to transfer on behalf of M. such title as testator possessed at the time of his decease. He then declared that, in the event of M.'s death without living issue, so much of all the lands described as she had not alienated and conveyed should go to certain other persons named. M. died after attaining the age of thirty-three but without issue, devising the lands in Nebraska to her husband. *Held*, That the testator intended to give to M. a fee simple estate in the Nebraska lands, with power of alienation after attaining the age of thirty-three.

2. ——: ——: **Limitation Over Void.** Where a testator devises land to his daughter in fee simple, a subsequent clause in his will, by which he attempts to devise over to others so much of the land as his daughter has not alienated during her lifetime, if she dies without living issue, is void.

APPEAL from the district court for Otoe county: PAUL JESSEN, JUDGE. *Affirmed.*

*L. F. Jackson, Andrew J. Sawyer, N. Z. Snell, James M. Woolworth* and *B. M. Thompson,* for appellants.

*Harry O'Neill* and *George I. Gilbert, contra.*

KIRKPATRICK, C.

This is an appeal from a judgment of the district court for Otoe county, and involves the construction of the last

---

* Rehearing denied. See opinion, p. 99, *post.*

will and testament of one Robert Hawke, and, primarily, the sixth item thereof, which, omitting formal descriptions of the premises devised, reads as follows:

"I give and devise to my daughter, Minnie Hawke (certain property in Nebraska, Missouri, Iowa and Dakota), together with, all and singular, the tenements, hereditaments and appurtenances unto all and each of the above mentioned and described premises, in 'Item Sixth' of this instrument referred to, belonging or in any wise appertaining; upon the express condition, however, that the said Minnie Hawke shall not grant, bargain, sell, convey, mortgage or otherwise incumber, or permit to be incumbered or sold, any of the premises described in said 'Item Sixth,' until she shall have attained the age of thirty-three years, except the timber land situated in * * * Missouri, and her undivided land situated in * * * Iowa, and the mineral lands * * * in Dakota, may be by her granted, bargained, sold, released, quitclaimed or demised with the assent and approval of my executors of this my last will and testament, hereinafter named, the survivors or survivor of them, expressed in the deed, lease or other instrument alienating the same, without the aid of a court of equity, and, to that end, I do hereby appoint Elizabeth A. Hawke, her mother, guardian of my said daughter, Minnie Hawke, until she shall have arrived at the age of majority, for the purposes of her person and the conveyancing by her, leasing and selling of said last mentioned property, and with full power and authority to execute and deliver, in the name of my said daughter Minnie Hawke, until she shall attain the age of majority, as such guardian, all necessary deeds, conveyances, leases and other muniments of title, to assure to the purchasers such title therein as I possessed at the time of my decease, and until the said Minnie Hawke shall arrive at the age of thirty-three years, it is my will and I do hereby direct and request my said executors, the survivors or survivor of them, to enter into and upon the above described premises, situated in the state of Nebraska, referred to in said 'Sixth Item' of this

instrument, and to lease and farm-let the same, for the use, benefit and behoof of my said daughter, Minnie Hawke, and (after deducting certain charges) pay to my daughter's guardian for her use, the balance of such rents, issues and profits from time to time, until she shall arrive at her majority, and afterwards to her as the same shall come to the hands of my executors, they charging to the rest, residue and remainder of my estate such reasonable sum annually for their services in that behalf as will be a just compensation therefor.

"To have and to hold all and singular, the premises in 'Item Sixth' of this my last will and testament, unto my said daughter Minnie Hawke, subject only to the limitations herein above made, and her heirs and assigns forever.

"In the event my said daughter, Minnie Hawke, shall depart this life, either before or after my decease, having no issue of her body born, her surviving, it is my will, and I do hereby order, direct and require, that all the above mentioned premises described in said 'Item Sixth,' not by her alienated and conveyed previous to her death, shall descend to and be divided between my beloved wife, Elizabeth A. Hawke, and my daughters, Ella Spencer and Lulu Hawke Rector, and their heirs by representation, share and share alike, provided that no part, parcel or portion of said property shall descend to and be vested in any child or children of my son, William Hawke, begotten upon the body of the herein above mentioned Sadie Gladstone."

The appellants, Ella C. Spencer and William Hawke, are the claimants under the above quoted item; the appellees being Charles Ford Scovil, the husband of Minnie Hawke, who is the devisee of the Nebraska lands described in the will, under the last will of Minnie Hawke, deceased, his wife, and certain other heirs of Robert Hawke who were made defendants because of alleged interest claimed by them in the premises. Minnie Hawke died after attaining the age of thirty-three years and after her marriage to Scovil, leaving no issue surviving her; and appellants

brought this suit for partition of the Nebraska lands, seeking to bar Scovil of his claim under the will of his deceased wife. The appellants' petition in the lower court was demurred to; the facts above mentioned being admitted to be true, and the will of Robert Hawke being made a part of the petition and subject to the same demurrer, which was by the trial court sustained, and the cause is presented in this court for determination.

The only property in controversy in this proceeding is that located in Nebraska. The question presented is whether the attempted devise over is valid; or, stated differently, did Minnie Hawke under the terms of "item sixth" take such a title in the Nebraska lands as empowered her to devise the lands to her husband, and thus defeat the excecutory devise? A right decision of this question depends upon a correct answer to two inquiries: What was the intent of the testator? And, is there any obstacle to the enforcement of that intent? A question of fact and a question of law.

A rule always jealously enforced by the court is that the intent of the testator must be carefully ascertained. No court will add to or substract one word, or twist or strain an existing word, in order to condemn or save from condemnation a bequest clearly contained in the will. In this important inquiry the language of the will is the only evidence of the intent. Counsel in their able and somewhat voluminous briefs have stated their various contentions in many forms, but we think the principal contentions may be stated briefly as follows: On behalf of appellants it is contended that, by the will, Robert Hawke intended to give to his daughter Minnie a life estate in the lands in controversy, or perhaps an estate upon a conditional limitation, determinable upon her death without issue, with an executory devise or remainder over to appellants.

On behalf of appellees it is contended that Minnie under the will took an estate in fee simple in the Nebraska lands, and that therefore the devise over must fall for repugnancy,

in harmony with the rule that there can be no limitation over after an estate in fee simple. We do not understand that there is any substantial conflict between the parties to this controversy as to the rule that, where a testator has once clearly vested in a legatee a fee simple, absolute, subsequent clauses will not operate to cut down such an estate to a less estate, such clauses being held void for repugnancy. It seems to us that as to this proposition there is no discord between the cases cited by both appellants and appellees. The parting of the ways is arrived at in the application of rules of construction, not of positive rules of substantive law. This may, perhaps, be indicated by a brief excerpt from *Sheets' Estate,* 52 Pa. St. 257, cited by appellants in their reply brief:

"Subsequent provisions will not avail to take from an estate, previously given, qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define the estate given, and to show that what without them might be a fee, was intended to be a lesser right."

Similar language, also quoted in appellants' brief, occurs in *Eaton v. Straw,* 18 N. H. 320:

"There can be no limitation over, after an absolute devise in fee simple; but an attempt to constitute a limitation over, after language which might otherwise be construed to convey an absolute fee, may serve to give a construction to that phraseology, and show that such an estate was not intended."

We think that these excerpts recognize the essential repugnancy between an estate in fee in the first taker, and an attempted devise over. While some question is made of the reasonableness of this rule, although sustained by many authorities, and some citations are made which plainly question its soundness, we will for the present assume it to be the rule applicable in this case, inasmuch as appellants seemingly base their case upon the assumption that Minnie Hawke took a base or determinable fee in the Nebraska lands, in consequence of which, under the rule stated, the

devise over would be good. It seems equally apparent to us that appellees have based their entire argument upon the proposition, that the devise over to appellants is valid if Minnie Hawke took less than a fee simple absolute in the lands in controversy, and have labored to show that the estate in her vested is one in fee simple, with unlimited power of disposition. We are brought therefore to the question of fact already suggested, namely: What estate was intended to be given to Minnie Hawke in the Nebraska lands? Our understanding of the language of Robert Hawke's will may be shown by rearranging the directions in the item quoted, reading the item as if it said:

"I give to Minnie the lands described in Nebraska, Missouri, Iowa and Dakota, to have and to hold all and singular unto the said Minnie, her heirs and assigns forever, subject only to the following conditions: The lands in Missouri, Iowa and Dakota, may be by her alienated with the assent of my executors, and, until she arrives at her majority, any such alienation shall be through her mother, hereby appointed her guardian, who shall have full power and authority, before Minnie's majority, to transfer, on behalf of her, such title as I possess therein at the time of my death. But the said Minnie shall not alienate or incumber any of the lands in Nebraska until she shall have attained the age of thirty-three years; and, until then, I direct that my executors shall take possession and manage the same, paying the profits to her."

As Minnie Hawke attained the age of thirty-three years, we may disregard the restriction upon her power of alienation until attaining that age, except so far as it may be necessary to consider it to ascertain the intent of the testator. As the lands outside of Nebraska are not in controversy, the directions concerning them are likewise interesting only in so far as they may enlighten the mind on the question of intent.

Appellants contend that Minnie Hawke was given a base or determinable fee in the Nebraska lands, which would ripen into a fee upon the birth of issue surviving

her, and, dying without living issue, would vest absolutely in the devisees over. To sustain this contention, they read the devising over clause as if it said: In the event of her death without issue, then all the lands in Nebraska, that is, the lands regarding which no power of alienation was given, shall go to, etc., restricting the words, "not by her alienated and conveyed," to the other lands devised. The argument assumes that she was not, by the will, empowered to alienate the Nebraska lands in fee simple, and if we have not misapprehended counsel, the warrant for this assertion is to be found in the fact that the testator did in express terms provide for the alienation by her of all the lands outside of Nebraska. There is no necessity, it is urged, to infer a power to sell in fee the lands in controversy, because the devisee has been expressly given the power to sell certain other lands in fee which are specifically described. We have read the language of this item many times, and can not bring ourselves to the belief that such a construction thereof is warranted. Let us read the item as if it contained no other devise than that of the lands in Nebraska. It would then give to Minnie Hawke, her heirs and assigns forever, all the lands in Nebraska, mentioned therein, subject only to the condition that she should not alienate the same until she arrived at the age of thirty-three years. Assuming that the item contained nothing more, would the testator not be understood by "a man of plain understanding" to mean that after the age of thirty-three had been attained, the power to alienate would vest? If one should say to his servant, "I give you this horse, upon the condition, however, that you shall not ride it until the first day of next month," the servant would be justified in assuming the right to ride it after the limitation had elapsed. Robert Hawke gave the Nebraska lands to Minnie Hawke, her heirs and assigns forever, upon the condition that she should not, until attaining a certain age, do with it what she would, except for the condition imposed, have had a right to do before then, a right incident to the estate

granted to her, her heirs and assigns forever. After attaining the age of thirty-three, therefore, in the absence of any words clearly indicating a contrary intent, it must be held that Minnie took an estate in fee simple in the Nebraska lands.

If such is the intent to be inferred from so much of the language of the item as relates solely to the Nebraska lands, what, if anything, is subtracted from the estate therein granted by reason of the fact that, in the same devise, the testator also devises other lands, and makes certain specific directions with reference to them? In substance, the testator has said, I give certain lands located in four states to my daughter, upon the condition that she shall not alienate the lands in one state until she is thirty-three years old; but the other lands she may alienate immediately, and, to that end, I make her mother her guardian, until she arrives at her majority, for the purpose of conveying this property for her, and give to her mother full authority to execute for her any instrument to transfer to the purchaser such title as I possessed therein at the time of my death. Does the fact that he expressly empowers her to alienate the lands outside of Nebraska, before she is thirty-three, imply that she is to have an estate less than a fee simple in the Nebraska lands? We are unable to answer in the affirmative. On the contrary, it seems to us, that, having attempted to restrict the power of alienation as to the Nebraska lands, he sought to avoid the possibility of a misconstruction of the exception, and to prevent its application to all the lands, by expressly stating that she might alienate the lands outside of Nebraska. Then, mindful of the fact that she was at the time of making the will under the age of majority, he sought to provide means for the alienation of those lands, before her majority, by the appointment of her mother as guardian; and, as we take it, the specific language in which he clothes such guardian with full power and authority to pass "such title as he possessed therein, at the time of his decease," is but the manifestation of a some-

what natural anxiety as to the obstacles that might present themselves to the alienation of the lands through a guardian before the devisee had attained her majority. As we read it, there is nothing in the language quoted, expressed or implied, regarding the lands outside of Nebraska, the appointment of a guardian for the minor devisee for certain purposes, the clothing of such guardian with certain powers, that argues against the supposition that the testator understood he had given Minnie Hawke a fee simple in the lands in controversy. The devising over clause, then, must be read as the testator wrote it, that is, the words, "not by her alienated and conveyed," must be taken to apply to all the premises described in the sixth item.

Coming now to a construction of the devising over clause, for the purpose of ascertaining whether the words "are operative to define the estate given," and to see whether "what without them might be a fee, was intended to be a lesser right," as expressed in *Sheets' Estate, supra,* it is plain that the testator's desire was that all the lands, including those in Nebraska, which Minnie had not alienated and conveyed, should, upon the happening of a certain contingency, go over, the contingency being Minnie's death without surviving issue. Minnie did die without issue. The question presented is, whether this is a case in which subsequent provisions are inserted to take from an estate, previously given, qualities that the law regards as inseparable from it, namely, alienability; or whether such provisions do, in fact, import that the testator has intended by the preceding language to give a less estate than that language, standing alone, would give. We have already concluded that the primary devising clause, standing alone, gives to Minnie a fee simple in the Nebraska lands. As we read it, the devising over clause rather reenforces than contradicts this construction, as it assumes in her the power of alienating those lands, and only attempts to give to the devisees over what she has not disposed of. It ought not to be contended that language

in a subsequent provision, which assumes that the first taker has the power of alienating the lands previously given to such devisee, her heirs and assigns forever, without other qualification, can be effective to cut down the estate of the first taker to a less estate. We think that before this can be done the language must be so clear as to leave no room for doubt.

We have then a case in which a testator has given to his daughter certain lands in fee simple, with a devise over to others of so much of the lands as his daughter has not disposed of. The rule is supported by a great weight of authority, both ancient and modern, that the devise over must fall for repugnancy.

In *Attorney General v. Hall,* Fitzg. (Eng. 1731) 314, the bequest was:

"Item. I give and bequeath all my real and personal estate unto my son Francis Hall, and to the heirs of his body, to his and their use, to be paid unto him in three years after my death, and during that time I make Sir Isaac Newton, executor of this my will, and after the said three years expired, I do appoint that my said son Francis shall be executor; and if my said son Francis Hall shall die, leaving no heirs of his body living, then I give and bequeath so much of my said real and personal estate, as my said son shall be possessed of at his death, to the Goldsmiths Company of London, in trust for several charitable uses mentioned in his will: But my will is, that the company shall not give my said son any disturbance during his life."

The testator died, and after three years Francis Hall took upon himself the execution of the will, and sometime after suffered a common recovery of the real estate, after which he made his will, appointing his wife executrix thereof, and died without issue. The Goldsmiths Company thereupon brought an action to have an accounting of so much of the estate as Francis Hall died possessed of. Quoting from the reporter's notes of that case:

"The court was unanimous, that the limitation over

was void, as the absolute ownership had been given to F. H., for it is to him and the heirs of his body, and the company are to have no more than he shall have left unspent; and therefore he had the power to dispose of the whole; which power was not expressly given to him, but it resulted from his interest: The words that give an estate-tail in the land must transfer the entire property of the personal estate, and then nothing remains to be given over."

In *Jackson v. Bull*, 10 Johns. (N. Y.) 19, the testator devised certain lands to his son Moses, his heirs and assigns forever, and then declared:

"In case my son Moses should die without lawful issue, the said property he died possessed of, I will to my son Young," etc.

It was held that the testator intended to give Moses an absolute control over the property, and the words, "the property he died possessed of," were, as in the Hall case, held to imply a power of disposition in Moses, repugnant to and destructive of the limitation over.

In *Ide v. Ide*, 5 Mass. 499, the testator gave to his son, Peleg, his heirs and assigns forever, certain lands; adding:

"That if my son Peleg shall die, and leave no lawful heirs, what estate he shall leave, to be equally divided between my son John Ide, and my grandson Nathaniel Ide."

The court there say:

"Whenever, therefore, it is the clear intention of the testator that the devisee shall have an absolute property in the estate devised, a limitation over must be void, because it is inconsistent with the absolute property supposed in the first devisee. * * * In the case at bar, there is, first, an express fee simple devised to Peleg; in consequence of which, if not afterwards qualified, he might dispose of the lands at his pleasure. But the limitation over is only of what estate he should leave at his death; which is descriptive only of the estate of which he should then be in possession. The implication is therefore neces-

sary, that the testator intended that Peleg might dispose of any or all of the estate devised, and leave nothing at his death. The absolute unqualified interest in the estate devised, was therefore given to Peleg, which is inconsistent with the limitation over to John and Nathaniel, and consequently this limitation, under which demandant claims, is void."

The last two cases cited follow *Attorney General v. Hall, supra,* and it is urged by appellants that they misapprehend the holding in the *Hall* case, but we think the three cases are in a direct line. The devises in the three cases are strikingly similar. In each the primary devise is in language, standing alone, which imports a fee simple, and the devise over is of what the first taker has not disposed of, implying that the first taker had the power of disposition. Other cases which announce the same rule are numerous and need not be tabulated herein.

Finally, it is asked why, if the intent of Robert Hawke may be certainly ascertained, that the property devised to his daughter Minnie, not by her alienated and conveyed, should go upon her death without issue to certain persons named, such intent should not be enforced, no principle of public policy contravening? The common law rule, condemning for repugnancy the devise over, is characterized as harsh and arbitrary, and we are asked not to commit the jurisprudence of this state to it. The answer is, we think, that where a testator has once clearly expressed his intent to give to a devisee a fee simple, that devisee, his heirs apparent and assigns, are entitled so to regard it, and deal with the subject of the devise as a fee simple. The holder of an estate in fee simple may sell it and convert it into money, or by will devise it, or, taking thought, may say, "I will not make a will, as I desire my property to go to my heirs in the manner provided by law." There is no sound reason why, in the last named event, the estate should not pass as he impliedly directs, or why, in the second event, it should not go as he expressly directs, but pass again under the dominion of the

very instrument vesting in him the estate that empowers him to sell it and convert it into money, as in the first named event, giving the money to his heirs. A testator is not, under the well established rule, and, as we think, should not be, permitted to control the future devolution of property vested by his will in fee simple in his devisee.

In the view we have taken, both of the question of fact, and the law applicable, it becomes unnecessary to discuss certain other questions suggested, and from what has been said, it follows that the judgment of the lower court sustaining the demurrer is right, and should be affirmed.

DUFFIE and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed March 2, 1904. *Motion overruled:*

SEDGWICK, J.

It is contended, in the brief upon the motion for rehearing, that the words, "not by her alienated," etc., do not refer to the Nebraska lands. We can not so regard it. The will devises to Minnie Hawke certain lands in Nebraska and in other states. By the terms of the will she is given the power to alienate the lands after she reaches the age of thirty-three years. This applies to all the land. The lands outside of Nebraska could be alienated before that time in accordance with certain provisions in the will applying to other, but not to Nebraska land.

It is also provided in the will that, if the devisee dies without issue, the lands shall "descend to and be divided between" the wife and other daughters of the testator. This provision, by its express language, is made to apply to "all of the above mentioned premises described in said item sixth." As the Nebraska land is described in item

"sixth," it is of course included. But this devise over to the wife and other daughters is expressly made to embrace only land "not by her (Minnie Hawke) alienated and conveyed previous to her death." As the lands in question were by her alienated and conveyed previous to her death, they are not included in the devise over.

The terms of the will seem plain. We do not see the necessity of applying abstruse rules of construction. The conclusion of the commissioner is correct, and the motion for rehearing is overruled.

MOTION OVERRULED.