WILLIAM H. LOOSING ET AL., APPELLANTS, V. FRED LOOSING ET AL., APPELLEES.

FILED SEPTEMBER 25, 1909. No. 15,576.

1. **Wills:** DEVISES: CONSTRUCTION. If an estate is devised to a person generally or indefinitely with a power of disposition, it carries the fee; but, if the testator gives the first taker an estate for life only with a power to dispose of the remainder to definitely described individuals, the express limitation for life will control the operation of the power and prevent it from enlarging the life estate to a fee.

2. **Powers:** IMPLIED GIFT. Where there is a power to appoint among certain objects and no gift in default of appointment, the law will imply a gift to the objects of the power.

3. ———: DISCRETION OF DONEE. Where the donee of a power is given discretion in making an appointment, that discretion will not be controlled by the court provided a substantial gift is made to each object of the power.

4. ———: ———: POWER OF COURTS. Should the donee depart this life without having exercised the power, the court cannot exercise the discretion vested in the donee, but will divide the property equally among the beneficiaries of the power.

5. ———: POWER IN TRUST. Where a testator devises to his wife a life estate in certain lands and lots with the power to "dispose" of or "distribute" the remainder as she sees fit, and later in the will there is a statement that the wife is to give two of their children out of the said remainder so much thereof "as she sees fit," and it appears from the will and all of the circumstances surrounding the deceased that it was his intention to devise all of his estate and not to permit any part thereof to vest in strangers to his blood, the widow takes a power in trust for the benefit of

the children referred to, and is not at liberty to exercise that power for the benefit of any one else.

6. **Wills:** DEVISES: CONSTRUCTION. Subsequent provisions in a will will not prevail to take from an estate in fee simple qualities that the law regards as inseparable from it, such as the right to incumber or convey. They are, however, operative to define the estate given, and may act to demonstrate that what without them would be a fee was intended to be a lesser estate; but, if a consideration of the entire instrument convinces the judgment that the estate first granted was intended to be a fee simple, then subsequent clauses restricting alienation and suggesting that the fee should descend to the devisees' children will not clog or denude the fee theretofore granted.

7. **Specific Performance:** FAMILY SETTLEMENT. A decree 'for the specific performance of a contract is not a matter of right, but rests in the sound discretion of a court, and, in such an action, where it appears that the defendant is an aged and illiterate woman, that the contract purports to distribute the estate of her late husband in violation of the terms of his will, and that at the time she signed the contract she did not know her legal rights, but was overreached by her children, the petition will be dismissed.

8. **Equity:** CANCELATION OF DEED. An undelivered deed signed by the donee of a power who was ignorant of her rights and privileges will be canceled in an equitable action involving a construction of the will creating said power, and of the rights of all devisees and legatees named therein.

APPEAL from the district court for Washington county: ABRAHAM L. SUTTON, JUDGE. *Judgment of district court vacated and judgment entered.*

*Clark O'Hanlon, W. S. Cook, H. C. Brome* and *F. Dolezal,* for appellants.

*John J. Sullivan, John H. Grossman* and *Louis Lightner, contra.*

ROOT, J.

William Loosing was born in Germany, but had resided in Washington county, Nebraska, 45 years next preceding his death, which occurred in November, 1905, and will be

referred to hereafter as the testator. Hannah Loosing, defendant herein, is the testator's widow. At the time of her marriage she was the mother of an illegitimate infant son, who thereafter resided with his mother and her husband until 29 years of age, in 1890. Six adult children also survived the testator, William H., Lena Moravec, Caroline Ruwe and Rosina Thompson, all of whom are married, and are plaintiffs herein, Louise, unmarried, but the mother of an illegitimate adult daughter, Ida, and Fred, who is also unmarried, defendants herein. In 1894 the testator executed a will devising and bequeathing to his wife all of his property. Possibly he made another will subsequent thereto and prior to 1904. In the last named year he made a will revoking all former wills by him made, and disposed of his property after payment of his debts as follows:

"(2) My will is that my beloved wife, Hannah Loosing, shall have the use and disposition of all my personal property, also the income as long as she lives off of the following described land:

"One hundred sixty acres in Nance county, Nebraska, all the land I own there. The east half of the northwest quarter (E ½ NW ¼) and the west half of the west half of the northeast quarter (W ½ W ½ NE ¼) in section twelve (12), township seventeen (17), range nine (9), Washington county, Nebraska, and the north half of the northwest quarter of section one (N ½ NW ¼), township seventeen, excepting thirteen rods along the east side of this (N ½ NW ¼ 1-17-9).

"Also the south half of the southwest quarter, and lot numbered two, all in section thirty-six (36), excepting thirteen rods along the east side of this (S ½ SW ¼ and lot 2) of said section thirty-six, township eighteen (18), range nine (9), Washington county, Nebraska, also all village lots as follows: Lots three and four in block 24, and lots three and four in block thirty-one, village of Arlington, Nebraska.

"I want my wife to dispose or distribute this property

which I have not devised, as she sees fit, or deems best in her judgment.

"(3) I bequeath to my son, William H. Loosing, the east half of the northeast quarter, and the east half of the west half of the northeast quarter (E ½ NE ¼ and E ½ W ½ NE ¼), all in section twelve (12), township seventeen, range nine, Washington county, Nebraska.

"(4) I bequeath to my son, Fred Loosing, the southwest quarter of the southwest quarter section thirty-one, township eighteen, range ten, the northwest quarter of the northwest quarter of section six, township seventeen, range ten, Washington county, Nebraska, and the north half of the northeast quarter of section one, township seventeen, range nine, and thirteen rods along the east side of the north half of the northwest quarter of said section one, township seventeen, range nine, and the south half of the southeast quarter and all of that portion of lot two in the north half of the southeast quarter, and thirteen rods along the east side of the south half of the southwest quarter, and thirteen rods along the east side of lot two in the south half of the southwest quarter, all in section thirty-six, township eighteen, range nine, Washington county, Nebraska. This my son Fred Loosing is to pay to my daughter Caroline Ruwe, six thousand dollars to be paid to her in four yearly payments of fifteen hundred dollars each.

"(5) I bequeath to my daughter, Louise Loosing, the home place where I now live, with the following described lands: The east half of the northwest quarter, and the west half of the west half of the northeast quarter, all in section twelve, township seventeen, range nine, Washington county, Nebraska.

"This daughter is not to have possession of this property until after the death of my wife. I want it distinctly understood that the property I have herein bequeathed to my two sons and one daughter that they shall not have the right to dispose or mortgage same, but it shall be handed down to their children.

"The remaining children which I have not mentioned in this will, I will leave it to my wife, to give them as she sees fit out of the property I left for her to dispose of. I want William H. Loosing and Louise Loosing to pay to my daughter Caroline Ruwe one thousand dollars each as soon as they get possession of the property."

The widow and children for a time were opposed to the 1904 will and conferred with a view to defeating it. At the same time the children were formulating a plan for the division of their father's estate regardless of the will, and called to their assistance two neighbors, Geissleman and Vogt, who seem to be honest, well-meaning farmer folk. The will had been deposited with the county judge, and he, in conformity with law, had given notice of a time and place for hearing evidence as to its execution. The estate is considerable, valued at about $100,000. William H. Loosing, Mrs. Thompson and Mrs. Moravec, who was then Mrs. Kruger, filed objections to the probate of the will. On the 26th of February, 1906, William, Louise and Fred Loosing and James Thompson, husband of Rosina Thompson, came to the widow's home, some of them before noon and others thereafter, with Messrs. Vogt and Geissleman. Mrs. Loosing in the meantime had consulted with at least two attorneys, and had been advised by one counselor that her interest under the will in certain real estate was a fee, and by the other that she would receive a life estate only therein. Mrs. Loosing cannot read English, speaks said language indifferently, and may be termed an illiterate woman. The testimony concerning what was said at the February, 1906, conference is conflicting. The widow and Louise each testified that the other children insisted that their mother should agree to a division of the estate; that the will should not control, and told her that, if she did not agree with them, they would be unkind to her; that she would be sent to the asylum should she attempt to testify in court; and that her character, the reputation of her daughter Louise, and that of the family would be ruined if the objections to the probate of the will

proceeded to a hearing. About 6 o'clock in the evening the children agreed among themselves, and their mother assented to their arrangement. Mr. Schoettger, a banker who speaks both German and English, was sent for, and wrote out a contract, which was signed by the widow and all of her children. The contract provided for an allowance to the widow of $1 an acre a year for all of the real estate owned by the deceased at the time of his death; that she should have the personal property of the estate, and the real estate was to be divided among the children according to their views, and not in conformity with the will. March 16, by agreement of all parties, the contract was modified so that the widow would receive 25 cents an acre more each year for the land. At the same time she signed a deed purporting to convey to Mrs. Thompson and Mrs. Moravec certain real estate subject to her life estate. During the March conference it was arranged that the will should be admitted to probate, and an action prosecuted in the district court to quiet each child's title to the real estate allotted him or her by the contract between them. March 23, 1906, the will was admitted to probate, and in May of the succeeding year this action for a specific performance of the contract was commenced. Ida Loosing, the illegitimate daughter of Louise, was not a party to the contract, but is impleaded as defendant herein. She asserts title to the land devised her mother, subject to the latter's life estate, and prays that her said title be quieted and confirmed. The other defendants charge fraud, coercion and duress, and that they signed the contract under a misunderstanding of the legal effect of the will. The widow prays that the aforesaid deed be canceled, and all ask for equitable relief. The district court found for defendants, dismissed the widow's action for a cancelation of the deed to her daughters, without prejudice to another action, confirmed Ida Loosing in the title claimed by her, and dismissed the petition. Plaintiffs appeal.

1. A careful consideration of the evidence fails to con-

vince us that the widow was coerced into signing the contract, but we are satisfied that she did not appreciate her rights. It is true she had taken counsel, but the advice given would becloud rather than clarify the situation, and there is not a shred of evidence to indicate that she was advised of the nature of the power vested in her. At the best, there was a great confusion of ideas as to the legal effect of the will and the rights of the respective parties. It will be observed that the second paragraph of the will gives the widow the use and disposition of all the testator's personal property; "also the income as long as she lives off of the following described land": One hundred and sixty acres in Nance county and certain real estate in Washington county, Nebraska. Subject to that life estate, part of the land devised to the widow for life is devised to the son Fred, part to Louise, and concerning the remainder the testator says: "I want my wife to dispose or distribute this property which I have not devised, as she sees fit, or deems best in her judgment," and in the fifth paragraph of the will further states: "The remaining children which I have not mentioned in this will (Mrs. Thompson and Mrs. Moravec), I will leave it to my wife, to give them as she sees fit out of the property I left for her to dispose of."

While cases are not lacking to sustain the proposition that a power of sale added to a life estate in real property vests the donee with an estate in fee simple, we think the weight of authority is to the contrary. 1 Sugden, Powers, ch. 3; 4 Kent, Commentaries (Rev. ed.), pp. *319, *536; *Fairman v. Beal,* 14 Ill. 244; *Walker v. Pritchard,* 121 Ill. 221; *Ducker v. Burnham,* 146 Ill. 9; *Burleigh v. Clough,* 52 N. H. 267; *Mansfield v. Shelton,* 67 Conn. 390; *Little v. Giles,* 25 Neb. 313. The New York decisions are controlled by statute, and are not, for that reason, authority upon the general proposition in other jurisdictions. The testator did not specifically designate in his will the methods to be pursued by his widow in executing the power vested in her by him, and she therefore is at liberty

to indulge her judgment or fancy by executing a deed or a will. *Proby v. Landor*, 28 Beav. (Eng.) 504; *Fairman v. Beal*, 14 Ill. 244; *Christy v. Pulliam*, 17 Ill. 59; *Burbank v. Sweeney*, 161 Mass. 490; *Cueman v. Broadnax*, 37 N. J. Law, 508.

2. A superficial examination of the will may suggest that the precatory words referring to Mrs. Thompson and Mrs. Moravec, being the children not named in the will, did not clothe them with any rights because they are not given a definite interest in any part of their father's estate, and the widow's discretion in the disposition of the aforesaid remainder seems absolute. It will be observed, however, that the testator recites in his will that he is disposing of all of his possessions of every kind and character, and that he does not make a gift over to any one other than his daughters Rosina and Lena in the event that the widow fails to make an appointment under the will. We must also consider that the testator and his wife's illegitimate son August parted in anger, and were never, so far as the record discloses, reconciled, and that August, in 1890, by threatening to sue his stepfather, collected from him about $1,300 for services rendered. The record is barren of any evidence to furnish a reason for the father's discrimination against his daughters Lena and Rosina, but, taking all of the facts into consideration, we feel justified in holding that the testator did not intend that any of his estate should go to strangers to his blood; that the power vested in the widow was created for the benefit of Mrs. Thompson and Mrs. Moravec, but that the donee is given a discretion in making the division between her daughters. Should the widow fail to act, no court could exercise the discretion lodged with her, and, in the event of her demise and failure to make an appointment, the daughters would take the real estate in equal shares. *Davy v. Hooper*, 2 Vern. (Eng.) 665; *Penny v. Turner*, 10 Jur. pt. 1 (Eng.) 768; *Longmore v. Broom*, 7 Ves. Jr. (Eng.) 124; *Re White's Trust*, Johns. Ch. (Eng.) 656; *Salusbury v. Denton*, 3 Jur. (n. s.) pt. 1 (Eng.) 740;

*Reid v. Reid*, 25 Beav. (Eng.) 469; *Withers v. Yeadon*, 1 Rich. Eq. (S. Car.) 324; *Cruse v. McKee*, 39 Tenn. 1, 73 Am. Dec. 186; *Millikin v. Welliver*, 37 Ohio St. 460; *Smith v. Floyd*, 140 N. Y. 337.

3. It is argued that the testator intended that William, Fred and Louise should have a life estate only in the land devised to them, and without the power to incumber or alienate, remainder to the surviving children of each devisee, and, failing such children, remainder to the surviving heirs at law of the testator or their heirs by right of representation. The intent of a testator must control, and will be ascertained from the language of the will aided somewhat by a consideration of the facts and circumstances surrounding the testator as reflected from the evidence, but that intent will not be inferred in flat contradiction to, and in violation of, well-established rules of law. We are committed to the principle that, if a testator in his will devises an estate in fee simple, a subsequent clause attempting to devise over any part of that estate is void. *Spencer v. Scovil*, 70 Neb. 87. We are satisfied with the principle stated in the cited case. The difficulty arises in applying the rule to the facts in the particular case. The rule does not of necessity apply merely for the reason that the first clause considered by itself might be construed as conveying a fee simple. The later clause, or clauses, may be read in connection with the first one for the purpose of advising the court whether it actually did transfer the fee, and if it does not in itself clearly and unequivocally do so, and by a comparison thereof with the remaining parts of the instrument the court is convinced that the testator did not in fact intend to vest the greater title in the first taker, the instrument will be construed accordingly. In other words, quoting Mr. Justice Strong in *Sheets' Estate*, 52 Pa. St. 257: "Subsequent provisions will not avail to take from an estate previously given qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define the estate given, and to show that what without them might

be a fee, was intended to be a lesser right." *Haldeman v. Haldeman,* 40 Pa. St. 29; *Shalters v. Ladd,* 141 Pa. St. 349; *Taggart v. Murray,* 53 N. Y. 233; *Eaton v. Straw,* 18 N. H. 320; 1 Jarman, Wills (6th ed.) *472. In Nebraska words of inheritance in a deed or will are not essential to transfer a fee simple title. The paragraphs of the will devising real estate to William, Fred and Louise, if considered by themselves, vest the devisees with a title in fee simple. When construed with the remainder of the will, it is apparent that part of the real estate is subject to the widow's life estate. The subsequent clause, which counsel claim explains and limits the force of the earlier ones in the will, does not indicate a purpose on the part of the testator to cut down the estate first granted, but that the children of the first taker shall inherit from their parents. If the testator intended that William, Fred and Louise should only take a life estate, a remainder could not descend or "be handed down" from them, and their children could not receive an estate, except from the testator and through his will, and he nowhere in that instrument devises anything to the children of his children. There is no residuary clause, and, if we construe the will as vesting the children with a life estate only, the remainder will vest under the statute relating to the estates of those dying intestate, and we do violence to the testator's introductory statement in his will that he is thereby disposing of all his estate. That the testator desired William, Fred and Louise to retain title to the farms devised to them, and that they should permit their children, if any they had, to succeed to that title, we do not question, but he has nowhere provided that such title shall proceed from himself. We conclude, therefore, from an examination of the entire will, that the estates devised to William, Fred and Louise were not cut down to a life estate by the subsequent statement that the land should be handed down to their children.

This being true, what force must be accorded the statement that the devisees shall not mortgage or dispose of the

land? In *Weller v. Noffsinger,* 57 Neb. 455, we held that a condition providing that property devised to trustees for years should not be aliened or incumbered by the beneficiary during that term was not invalid, and in *Albin v. Parmele,* 70 Neb. 740, we upheld such a restraint imposed upon a life estate. We, however, have never held, nor do we believe it to be sound law, that a general restraint against alienation may be successfully attached to an estate in fee simple. Such a limitation is repugnant to the estate conveyed, against public policy, and void. *Spencer v. Scovil,* 70 Neb. 87; 4 Kent, Commentaries (Rev. ed.) pp. *143, *144; 1 Washburn, Real Property (6th ed.), sec. 143; *Turner v. Hallowell Savings Institution,* 76 Me. 527; *Anderson v. Cary,* 36 Ohio St. 506; *Stansbury v. Hubner,* 73 Md. 228; *Kaufman v. Burgert,* 195 Pa. St. 274, 78 Am. St. Rep. 813. In the light of our decision the defendant Ida Loosing takes nothing under the will, and the court erred in decreeing to the contrary. The widow has not appealed from that part of the decree dismissing without prejudice her complaint concerning the deed conveying the remainder, heretofore referred to, to her daughters Rosina and Lena. Plaintiffs, however, request a consideration of all the issues raised by the respective pleadings; all of the parties are before us, and we think their rights, as far as may be, should be finally determined.

Plaintiffs also urge that family settlements should be upheld, and the contract between the widow and children of the deceased specifically enforced. While family settlements are at times desirable, litigants claiming title to an estate by virtue of such an agreement and against an aged, infirm and illiterate widow bear the burden of proving that the defendant understood the contract, and was not deceived by her active and aggressive children. *In re Estate of Panko,* 83 Neb. 145. So far as the widow is concerned, she may or may not receive as much under the contract as under the will, but the contract deprives her of the control of part of the land devised to her by her husband. Those responsible for the settlement were con-

cerned principally in advancing their own interests.  There is evidence, which we do not care to specifically mention, that satisfies us that the widow was overreached in the transaction, and did not exercise a discretion in disposing of the remainder of the real estate under the power in the will.  We are confident that she at no time knew or understood her rights in the premises, but was, possibly inadvertently, misled by those upon whom she had a right to lean for comfort and support.  It is also doubtful whether she ever delivered the deed to Mrs. Thompson and Mrs. Moravec.  The district court exercised a wise discretion in refusing a specific performance of the contract.  The widow is advanced in years, and this litigation should end so far as she is concerned.  What has been said here is without prejudice to the rights of the litigants should the probate court vacate its order admitting the will to probate and that instrument eventually be held invalid.

The judgment of the district court, therefore, is set aside, a decree will be entered in this court in conformity with this opinion, and taxing all of the costs in the district court and in this court to plaintiffs and Fred Loosing..

JUDGMENT ACCORDINGLY.

REESE, C. J., absent and not sitting.