A. A. HULSE, ADMINISTRATOR, APPELLANT, V. IRIS TANNER, APPELLANT: CASSIUS TANNER ET AL., APPELLEES.

A. A. HULSE, ADMINISTRATOR, APPELLANT, V. WADE FLYNN ET AL., APPELLANTS: J. CHRIS PETERSON, ADMINISTRATOR, ET AL., APPELLEES.

6 N. W. (2d) 618

FILED NOVEMBER 27, 1942. Nos. 31446, 31447.

*Morrow & Miller*, for appellants.

*Howarth N. Olsen* and *Curtis O. Lyda, contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

The two cases constituting the subject of this appeal were argued together, and a determination of the principal question involved will be decisive as to both. Therefore, one opinion suffices.

On April 16, 1940, the administrator with the will annexed of the estate of Frank G. Tanner filed a report of receipts and expenditures in the county court. On May 8, 1940, such administrator filed a petition in the county court, praying for a construction of the will of Frank G. Tanner, deceased, and for directions as to the distribution of the funds in his hands to the persons entitled thereto.

Frank G. Tanner died December 5, 1931. His last will and testament was probated January 2, 1932. The administrator of the estate of Myron Tanner, deceased, filed an application in the district court for license to sell an undivided one-fifth interest in the real estate described in the seventh clause of the last will of Frank G. Tanner, to pay debts allowed against the estate of Myron Tanner, a son of Frank G. Tanner and an heir, with certain interests, under the will of Frank G. Tanner. Myron Tanner died without issue January 18, 1940. His heirs consisted of his widow, his brothers and sisters.

In November and December, 1938, Myron Tanner and his wife executed and delivered mortgages to one Wade Flynn,

to secure payment of certain sums of money on an undivided one-fifth interest in the premises described in the seventh clause of the will of Frank G. Tanner.

The pleadings are proper in form to present the controverted issues to this court, which require a construction of the will of Frank G. Tanner, and present the following question for our determination: Whether or not Myron Tanner acquired under the will of Frank G. Tanner, and was at the time of his death the owner of the fee simple title to, an undivided one-fifth interest in the real estate described in the seventh clause of the will of Frank G. Tanner, or whether the interest acquired by Myron Tanner in said real estate under said will was a defeasible estate which terminated upon his death without issue. A subordinate question involved is whether or not an undivided one-fifth interest in the income from said real estate which was collected by the administrator with the will annexed of Frank G. Tanner at the time of the death of Myron Tanner belonged to Wade Flynn as the assignee of Myron Tanner, or to the estate of Myron Tanner, or to the remaining legatees and devisees under the will of Frank G. Tanner. The district court, affirming the county court, adjudged Myron Tanner acquired a defeasible estate or interest in the real estate described in the seventh clause of the will of Frank G. Tanner and the income therefrom, and that upon the death of Myron Tanner his interest in the real estate and income terminated and passed to the remaining legatees and devisees under the will of Frank G. Tanner. From the decree in each of said cases, the losing parties appeal.

The law is well settled in this state. Section 76-109, Comp. St. 1929, provides: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." See *Schnitter v. McManaman*, 85 Neb. 337, 123 N.

W. 299; *Lehman v. Wagner*, 136 Neb. 131, 285 N. W. 124, and other Nebraska decisions. With the foregoing rule established, we set forth parts of the will and some parts in detail from which the controversy arises. The second clause reads:

"I give, devise and bequeath to my children, Cassius Tanner, Lawrence Tanner, Grace Tanner, Myron Tanner and Willo Tanner, and to their issue, all of my property in the manner following:"

The third clause of the will disposes of the family piano to Willo and the household effects to Grace, requesting the latter to give to several members of the family such articles as she may choose and in accordance with the requests made. The fourth clause of the will reads:

"I order and direct that my Executor shall provide for the support, maintenance and education of my daughter, Willo, from any funds of my estate until she has attained the age of twenty-one years and remains unmarried, and I suggest in arriving at the reasonable amount necessary for her maintenance, education and support that my Executor consult with my daughter, Grace."

The fifth clause of the will permits Lawrence to occupy certain premises for a period not to exceed 10 years, to pay no rent therefor, but to pay cost of reasonable repairs and taxes, and in the event that he does not occupy such premises the executor is authorized to sell the same at his discretion, the proceeds of sale to be divided share and share alike among the children living at the time of such sale, and if such premises are not disposed of within 10 years from the death of testator, then it shall be considered a part of the residue of the estate. The sixth clause provides for the sale of certain personal and real property at the discretion of the executor; distribution to be made among the children living at the time of testator's death, share and share alike, and until the sale thereof the premises designated in the paragraph to be occupied as a home by Grace and Willo, without rent. The seventh clause reads:

"It is my will that my two farms more particularly de-

scribed as * * * (premises described) be not sold or disposed of until ten years after my death and that during said period my Executor shall have full charge of the same and that the income therefrom be used first for the payment of taxes and upkeep on said farms and for the support, maintenance and education of my daughter, Willo, until she shall have attained the age of twenty-one years or be married and that the surplus of said income shall be distributed from time to time equally among my four other children until my said daughter, Willo, shall have attained the age of twenty-one years or be married after which said surplus shall be divided equally among my children."

The eighth clause reads: "Provided nevertheless that in case any child of mine shall have died before the period of distribution of any of my property leaving issue living at the time of distribution or descent, such issue shall stand in the place of and take per sterpes the share of the amount distributed or devised which said deceased child would have taken if he or she had been living at the time of distribution or descent, and provided further that if any of my children shall die without leaving issue then in that event my remaining heirs shall take his or her share."

The ninth clause contains a provision that Willo shall not receive her distributive share as provided in the fifth and sixth clauses until she shall arrive at the age of 21 years, and directs the executor to invest Willo's share and pay the same to her when she shall attain the age of 21 years. The tenth clause reads:

"I hereby designate my farms herein described and any real estate of which I may die seized and which has not been disposed of by my Executor within ten years of my death and any personal property, moneys or credits in the hands of my Executor ten years after my death as the residue of my estate." The eleventh clause reads:

"All the residue of my estate both real and personal and mixed I give to my children share and share alike."

At the time of Myron Tanner's death, all of the property except the two farms and the proceeds collected as income therefrom had been distributed to the legatees.

The appellants' contention is that, inasmuch as all of the testator's real estate except the farms described in the seventh clause of the will had been disposed of before Myron Tanner's death and the proceeds thereof distributed to the children, this eliminates from consideration all of the tenth and eleventh clauses of the will, so that such clauses now read as follows: "Tenth. I hereby designate my farms * * * (described) as the residue of my estate." "Eleventh. All the residue of my estate both real and personal and mixed I give to my children share and share alike;" that no provision of the will authorizes the executor to sell and dispose of the testator's farms, as set forth in the seventh clause of the will, and that the tenth and eleventh clauses of the will are the same as if the will had contained a single clause, giving the premises to his children share and share alike.

Section 76-105, Comp. St. 1929, is cited, reading, "The term 'heirs,' or other technical words of inheritance, shall not be necessary to create or convey an estate in fee simple," and the following cases in support thereof: *Little v. Giles,* 25 Neb. 313, 41 N. W. 186; *Schnitter v. McManaman, supra; Kluge v. Kluge,* 103 Neb. 534, 172 N. W. 756.

Appellants cite section 76-106, Comp. St. 1929, providing: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used," and section 30-202, Comp. St. 1929, reading: "Every devise of land in any will hereafter made, shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will, that the devisor intended to convey a less estate," and contend that, therefore, the tenth and eleventh clauses of the will devised the farms of the testator to his children in fee simple unless the provisions of those clauses are limited, restricted or modified by the seventh and eighth clauses of the will or either of them.

With reference to the seventh clause of the will, the appellants state: It does not devise or purport to devise the

farms or any interest in them and does not absolutely prohibit the sale of the farms for the period of 10 years. It merely recommends that they not be sold during the period and provides that the executor collect the rents and apply them to the upkeep of the farms, and for the support and education of his daughter Willo until she arrives at the age of 21 years or is married. Appellants contend that this provision imposes a valid charge upon the farms and is not inconsistent with the devise of a fee simple title, and does not limit or restrict the title conveyed by the tenth and eleventh clauses of the will and does not create a trust; that its only effect is to impose a charge on the farms for the support of the testator's daughter Willo, and the balance of the clause consists merely of precatory expressions; quoting from *Howells State Bank v. Pont*, 113 Neb. 181, 202 N. W. 457, as follows:

" 'The modern tendency is to limit the application of the doctrine of precatory trusts, and words of desire, recommendation, and the like, will be given their ordinary significance and will not be held to create a trust unless, from the terms and dispositions of the will and the circumstances, relevant to proper construction, it clearly appears that said expressions were used in an imperative sense, and that the testator intended to create a trust.' 2 Alexander, Wills, secs. 1090, 1091." See *In re Estate of Greenamyre*, 133 Neb. 693, 276 N. W. 686.

Appellants cite *Smullin v. Wharton*, 83 Neb. 328, 119 N. W. 773, and 69 C. J. 126, contending, as said in the *Smullin* case, "It is an elementary rule that the provisions of a will take effect and become operative at the time of the death of the testator," and that there is nothing in the will to show that testator intended the title to his farms would not vest in the devisees mentioned in the eleventh clause of the will immediately upon his death, and that the laws of Nebraska favor the early vesting of estates.

We deem unnecessary an analysis of the fifth and sixth clauses of the will. The property described therein has been disposed of and the proceeds divided among the lega-

tees, which would include Myron Tanner, and such clauses furnish no basis for a conclusion relative to the desires of the testator on the disposition of other property not described therein.

In the eighth clause of the will, appellants contend, the first proviso refers to the death of any child leaving issue at the time of the distribution or descent, and applies to the property mentioned in the fifth clause of the will, which may be distributed as personalty at any time within 10 years after testator's death or descend under the will at expiration of 10 years after testator's death, and has no application to Myron Tanner's interest in the farms, because he died without issue, and the only part of the eighth clause which could in any manner have application to descent or termination of Myron Tanner's interest in the farms is the second proviso, which does not contain the phrase, "before the period of distribution," or "the period of descent." To sustain this proposition we are referred to the law on provisos, the principal authority being 50 C. J. 835, wherein it is said:

"The true office of a proviso is to restrict the sense or make clear the meaning of that which has gone before; to qualify, restrain, or otherwise modify the general language of a principal clause; its object is to except something out of the general terms of the grant, statute, or other instrument to which it may be attached; to except something from, or restrain the generality of, what precedes it. It implies a condition and defeats the operation of the antecedent clause conditionally; it avoids such antecedent clause by way of defeasance. A proviso can have no existence separate and apart from the provision which it is designed to limit or qualify. It should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. It applies to the immediately preceding clause or provision alone, unless there is something in the subject-matter which requires a different construction."

Therefore, it is argued, there is nothing in the Frank G. Tanner will to indicate that it was the intention of the tes-

tator to apply the provisos mentioned in the eighth clause of the will, or either of them, to any provision of the will following that provision.

Assuming the rule be accepted in attempting to apply it, then the eighth clause is a limitation on the seventh clause of the will, the subject of which is the testator's farms and the only property which remained at Myron Tanner's death. If it is a limitation on the devise of these farms and the income therefrom, the application of the rule is not helpful to the appellants.

Appellants further contend that, because the second proviso in the eighth clause of the will contains no reference to the period of distribution, it applies only to deaths occurring prior to the death of the testator. An analysis of the record discloses that Frank G. Tanner executed this will seven days before he died. We cannot believe that he contemplated any of his children would predecease him, and, if he had so believed, he undoubtedly would not have mentioned the period of distribution in the first proviso.

As stated in *Schnitter v. McManaman, supra* (p. 341): "The rule that the words of limitation shall be applied to the death of the first taker without issue during the life of the testator is said to be extremely technical in its character and does not apply where there are indications, however slight, that the testator referred to death subsequent to his own demise." This language is thoroughly applicable to the circumstances of the instant case, and we see no merit in appellants' contention in such respect.

Appellants claim that the tenth and eleventh clauses of the will are clear, unambiguous, definite and certain and, standing alone, convey to the devisees therein mentioned a fee simple title to the farms; that the seventh and eighth clauses of the will are subject to a construction which harmonizes with the plain, unambiguous provisions of the tenth and eleventh clauses of the will; therefore, a clearly expressed condition of one part of the will cannot be controlled by a doubtful construction of another part.

Referring to the second clause of the will and construing

the will in its entirety, it is evident that in the beginning of the testament Frank G. Tanner gave all of his property to his children, stating that such gift was· "in the following manner;" in other words, subject to all of the provisions thereafter contained in the will. The eleventh clause of the will was unnecessary and could have been omitted by the testator, but the mere fact that it was not omitted does not change the devise or make the intention of the testator ambiguous. If anything, it confirms the second clause of the will which gave his property to the children, subject to all the restrictions and limitations therein contained. Then referring to the seventh clause of the will, the testator starts: "It is my will." This is more than a recommendation; it is a limitation. The words, "It is also my will," are more than a mere entreaty or expression of desire; they are words of command; they express an imperative testamentary design. *Hess v. Singler,* 114 Mass. 56; *Temple v. Russell,* 251 Mass. 231, 146 N, E. 679, 49 A. L. R. 1.

The appellants contend that the will granted to the children of Frank G. Tanner an estate in fee simple, and that provisions of limitations contained in the will should be held void because such limitations are repugnant to the estate granted; citing *Spencer v. Scovil,* 70 Neb. 87, 96 N. W. 1016; *Loosing v. Loosing,* 85 Neb. 66, 122 N. W. 707; *Yates v. Yates,* 104 Neb. 678, 178 N. W. 262; *Myers v. Myers,* 109 Neb. 230, 190 N. W. 491. In the latter case the question was the application of the rule in Shelley's Case. The court said: "Let us stop here to mention a rule ·quite universal, one which exists in this state, and one with which the appellants have no quarrel. Where a testator devises property to a person and to his heirs, the conveyance of a fee, he cannot, by his will, make a valid restriction to the effect that such person shall not alienate the property during his lifetime." And the case of *State Bank of Jansen v. Thiessen,* 137 Neb. 426, 289 N. W. 791, is cited wherein the court said: "It is a fundamental rule when an estate in fee simple is devised that an attempt by the testator to prevent alienation is ineffective and void for the reason that it is repugnant to the

estate devised." Such are the holdings cited by appellants, and unquestionably the correct law is stated. However, in an analysis of the Frank G. Tanner will the second clause thereof leaves the property to the children "and to their issue" "in the manner following:" These words indicate at once that no fee simple estate was intended by the testator.

In *Schnitter v. McManaman, supra,* the court reviewed some of the cases applying the rule, and then disposed of the question by saying (p. 340) : "In *Sheets' Estate,* 52 Pa. St. 257, it is held that subsequent provisions in a will are at times operative to define an estate given, and to show that what without them would be a fee was intended to be a lesser estate." In *Loosing v. Loosing, supra,* it was said in the opinion (p. 74) : "The rule does not of necessity apply merely for the reason that the first clause considered by itself might be construed as conveying a fee simple. The later clause, or clauses, may be read in connection with the first one for the purpose of advising the court whether it actually did transfer the fee, and if it does not in itself clearly and unequivocally do so, and by a comparison thereof with the remaining parts of the instrument the court is convinced that the testator did not in fact intend to vest the greater title in the first taker, the instrument will be construed accordingly."

In *State Bank of Jansen v. Thiessen, supra,* the grant was to testator's son and his heirs forever, with the provision in the same sentence to prevent the son from encumbering the land. The court found the provision repugnant to the estate granted either under the intent statute or under the rule in Shelley's Case. The court said: "Whether in a given conveyance a limitation to the heirs of a designated person creates an estate in such heirs as purchasers, or whether such a limitation operates to create an estate in fee simple absolute, depends upon the form of the limitation." There was no similarity between the form of limitation in that case and in the case at bar, and the rule announced therein is not applicable here.

As heretofore stated, every word in the will of Frank G.

Tanner must be analyzed to determine the testator's intent, having in mind the rule as announced, in giving the will its construction. We conclude that the county court and the trial court correctly construed the will.

Frank G. Tanner intended no fee to pass. What he did was, in effect, to create a trust to last 10 years after his death, and he gave his reasons for the creation of the trust, viz., the education, support and maintenance of his minor child. He disclosed his interest in the child Willo as plainly and considerately as he could. His children received an equitable interest only in the premises, subject to destruction, unless they lived until the termination of the trust. The will presents no new problem. Cases in point, which would unnecessarily lengthen the opinion if analyzed, we refer to: *Schnitter v. McManaman, supra; Merrill v. Pardun,* 125 Neb. 701, 251 N. W. 834. See, also, *Case v. Haggarty,* 91 Neb. 746, 137 N. W. 979; *Weller v. Noffsinger,* 57 Neb. 455, 77 N. W. 1075.

The appellants contend that they are entitled to a share of the money in the hands of the administrator on the date of the death of Myron Tanner, which is money collected by him from the farms; that under the seventh clause this income was to be used for payment of taxes and upkeep on the farms, and the surplus was to be distributed from time to time equally among the children, but before any child could recover money from the administrator it was necessary to show that a surplus actually existed, and that the executor wilfully refused to make distribution.

There is no evidence in the record that the administrator had a surplus on hand, at the time of Myron Tanner's death, not needed to pay taxes and upkeep on the farms. There was no definite time of payment fixed by the terms of the will, and it is clear from a reading thereof that the testator intended his own family to participate in his estate, and the money in the hands of the administrator belongs to the surviving children of Frank G. Tanner.

We find no ambiguity in the will and, giving proper consideration to the second clause thereof which the appellants

have eliminated in their consideration of the case, we conclude that the eleventh clause of the will was surplusage and unnecessary.

We conclude for the reasons given that Myron Tanner acquired a defeasible estate or interest in the real estate described in the seventh clause of the will of Frank G. Tanner, deceased, and in the income therefrom, and that, from the death of Myron Tanner, his interest in the real estate and income terminated and passed to the remaining legatees and devisees under the will.

The decree and judgment of the district court are affirmed.

AFFIRMED.