[Filed at Pendleton, May 14, 1889.]

JASPER, RESPONDENT, *v.* JASPER, APPELLANT.

A WILL IS DEFINED TO BE THE LEGAL DECLARATION of a man's intention which he wills to be performed after his death.

IN CONSTRUING WILLS, THE RULE IS, THAT THE INTENTION MUST GOVERN, provided it be consistent with law; but in ascertaining what the intention is, the words used are to be taken according to their meaning, as gathered from the consideration of the whole instrument and a comparison of its various parts; and this is often aided by extrinsic circumstances surrounding its execution, in revealing more clearly the motive or intention which may be reasonably supposed to have influenced the testator in the disposition of his property.

WHERE A WILL PROVIDED THAT, AFTER THE PAYMENT OF THE DEBTS AND LEGACIES SPECIFIED, the residue of all the testator's property was to be held in trust for a certain period, and out of the rents and profits to be collected therefrom the executors were to pay to the widow such sum or sums as may be necessary for the support of such widow and the support and education of the minor children, and the county court, before such debts were paid, and while the estate was still unsettled, ordered the executors to pay a certain sum for such support and maintenance: *held*, that as under the will the executors were not to pay such sum or sums for that purpose until the residue was ascertained and the trust invested, the court was not authorized to make the order. *Held further* (by Lord, J., Thayer, C. J., concurring), that the duty to pay debts and legacies was

strictly executorial, and that when this was done, and the property taken on trust for the purposes specified, the executors became trustees exclusively, and the jurisdiction thereafter was in equity.

*T. H. Crawford* and *R. Eakin*, for Respondent.

*J. D. Slater*, for Appellant.

LORD, J.—This is an appeal from the order of the county court of Union County, making certain allowances under a will of M. Jasper, of that county, for the support and maintenance of his wife and two minor children, which the defendant, as executor, did not fully comply with, and upon a subsequent petition, citation was issued for him to show cause why the order had not been obeyed, etc. Briefly, the facts are these: M. Jasper died April 9, 1885, leaving a will, which was duly probated, and in which he named as executor W. R. Jasper and George G. Gray. On petition, W. R. Jasper was appointed sole executor of the will. Subsequently, the plaintiff filed her petition, setting forth that she was the widow of M. Jasper, deceased, and that under his will she was entitled to her support and the support of her two minor children, and on July 6, 1887, the county court made an order requiring the defendant, as such executor, to pay to the defendant the sum of six hundred dollars per annum for the year commencing April 9, 1887, for such support and maintenance. The defendant not fully complying with such order, on December 8, 1887, the plaintiff, by petition upon the facts therein stated, prayed that the defendant, as such executor, might be required to show cause why he had not complied with such order. In response to such citation upon such petition, the defendant appeared and demurred, which the court overruled, whereupon he answered, which not proving satisfactory to the court upon the hearing, he was ordered to comply with the original order made herein, etc. An appeal was taken to the circuit court, and the

order of the county court was affirmed, making the allow-ances as aforesaid under the will, and from that order or decree of affirmance this appeal is taken.

The question to be determined is, Had the county court jurisdiction to make the order of July 6, 1887, requiring the defendant, as executor of the will of M. Jasper, deceased, to pay to the plaintiff, as his widow, the sum of six hundred dollars per annum for the support and maintenance of herself and children? It is agreed by counsel that the proper determination of this question depends upon the construction to be given to certain clauses in the will of M. Jasper, deceased. The will begins by devising a certain tract of land, known as the Trimble farm, and described therein, to the plaintiff, "to have and to hold the same as long as she remains my widow, or until my two minor children, Frank C. Jasper and Willard Jasper shall reach the age of twenty-one years." There then follows several bequests to his other children of the sum of ten dollars each, and to one of them a certain horse, called Black Hawk.

Now come the provisions under which the support is claimed, and out of which the controversy arises. It is this: "After the payment of my debts and the legacies hereinbefore mentioned and given, I give all the residue of my estate, both real and personal, of every kind and nature, including the remainder in the lands hereinbefore mentioned, as given and bequeathed to Emily Jane Jasper, after the termination of her said estate in said lands, to my executors, to hold and to keep and collect the rents and profits of said property until my two minor children, Frank C. Jasper and Willard Jasper, shall reach the age of twenty-one years; and my executors shall pay out of the income from my said property to Emily Jane Jasper, yearly, such sum or sums as may be necessary for the support and maintenance of said Emily Jane Jasper, and

the education and support of my two minor children, Frank C. Jasper and Willard Jasper, as long as said Emily Jane Jasper remains my widow, or until the two minor children, Frank C. Jasper and Willard Jasper, become of age; and to pay such sum or sums as may be necessary for the education and support of said minors in case of the death or marriage of Emily Jane Jasper, until the minors have reached the age of twenty-one years; and to pay out of the income of said property to Nancy Catherine Jasper, yearly, such sum or sums as may be necessary for her support and maintenance as long as she remains unmarried, or until the two minor children hereinbefore mentioned have reached the age of twenty-one years. When my two minor children, Frank C. Jasper and Willard Jasper, whose ages are now respectively eight and six years, reach the age of twenty-one years, or in case of the death of either, when the other arrives at that age, or in case both die before reaching that age, then at the death of both, my executors are to divide the residue and remainder of all my property and estate between all my children and my wife, Emily Jane Jasper, share and share alike, if my said wife shall be living at the time of the division of said property. And I hereby appoint as the executors of this my last will and testament William Robert Jasper and George G. Gray. And it is my request and instruction that said executors sell and dispose of the property placed in their hands by this instrument when it is to the best interests of the estate to do so, and it is my further request that the lands known as the Reeves place be held until the final distribution of my estate, etc."

In construing wills, the principle is familiar and well understood that the intention must govern. A will is defined to be "the legal declaration of a man's intention which he wills to be performed after his death." (2 Bla.

XVII. OR.—38

Com. 499.) And Chief Justice Marshall said: "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." (*Smith* v. *Bell*, 5 Pet. 68.) To ascertain what the intention is, we must take the words used according to their meaning, as gathered from a consideration of the whole instrument and a comparison of its various points. And this is often aided by extrinsic circumstances surrounding its execution, and showing the situation of the parties, whereby light is thrown on the motive or the intention which may be reasonably supposed to have influenced the testator in the disposition of his property.

In the case at bar, however, we are confined solely to a construction of the instrument according to the words used, viewed as a whole, as the record discloses no extrinsic facts by which the language of the will in the discovery of its meaning can be aided. Nor can much assistance be gained by decided cases, so diverse are the terms of such instrument, and so varying are the facts in which they originate. So that it has been well and truly said that cases on wills may guide us to general rules of construction; but unless a case cited be in every respect directly in point and agree in every circumstance, it will have little or no weight with the court, who will always look upon the intention of the testator as the pole-star to guide them in the construction of wills. (*Smith* v. *Bell, supra.*)

Now, turning to the will, let us ascertain, from an examination of it, when it is that the executors are required to pay out of the income of the testator's property such sum or sums as may be necessary to furnish a support to the plaintiff and the minor children; for until that duty is devolved upon the executors by the will, no court is au-

thorized to require its payment, and if it does so, its order is a nullity. Preliminarily, it may be said that counsel concur in the construction of the will that, after the payment of the debts and legacies, the executors hold the property mentioned in trust for the purposes specified, but they disagree as to the character or capacity in which they hold the same in trust.

By reference to the provisions of the will already referred to, it will be observed that it is "after the payment of my debts, and the legacies *hereinbefore mentioned and given*," that the testator gives all the residue of his property, both real and personal, to his executors. It is only when the executors have paid his debts and these legacies before mentioned that the residue can be ascertained, which is, by the terms of the will, to be vested in trust in his executors for the purposes specified; and the legacies here referred to cannot mean any legacies or charges which are to be paid out of the income of the residue of his property which such executors are to hold in trust. When these are paid,— the debts and legacies before mentioned,— whatever else is fastened on the residue of the property with which the executors are invested, and to be paid out of it on its income, only commences when such residue is ascertained, or, in other words, "after the payment of the debts and the legacies before mentioned." This must be so, not only according to the natural order of things, but according to the plain language of the will so far as we have gone. Now, what is the object of putting this residue of his property in trust in the executors of his nomination, so far as it relates to the purposes we are considering?

The will says that the testator gives the residue of his property, both real and personal, to his executors, "to hold and keep, and to collect the rents and profits of said property" until the minor children, whose ages then were

respectively six and eight years, shall reach the age of
twenty-one years, and that "my executors shall pay out of
the income from my said property [now the residue] to
Emily Jane Jasper [the plaintiff], yearly, such sum or sums
as may be necessary for the maintenance and support of
said Emily Jane Jasper, and the education and support of
my two minor children," etc.   Plainly, the object of this
trust for the time specified, so far as it relates to the
plaintiff, was to enable the executors to carry out the in-
tention of the testator in her behalf, by providing them
with the necessary means to furnish the support and main-
tenance his will contemplated.   As it is only the residue of
the estate, both real and personal, which the executor takes  ·
in trust under the terms of the will, and from which they
are then authorized to collect the rents and profits, it can
only be out of the income derived from such rents and
profits, and collected from such property so held, that the
executors can pay such sum or sums as may be necessary
for the support of the plaintiff and the support and educa-
tion of the minor children.   It must be manifest, then,
that the support and maintenance intended by the testator
to be given to his wife and minor children during the
period of the trust declared in the will could not be paid
until the residue was ascertained by the payment of the
debts and legacies specified.   The subject-matter, while it
may have existed, was not tangible as such, and capable
of being made effective in carrying out the intention of
the testator, until the debts and legacies were paid and
the residue of the property ascertained, out of which the
income was to be derived to furnish the support and
maintenance given by the will.

As the record discloses that the debts were not paid,
and the estate is still unsettled, it necessarily results that
the residue of the estate to be held in trust is not defi-
nitely ascertained from which such income is to be de-

rived, and, according to the terms of the will, to be paid by the executors to the plaintiff in such sum or sums as may be necessary for such support and education as specified, and, consequently, that the time for its payment had not yet arrived when the order was made, and that such order was therefore prematurely made and cannot be upheld. But while we all agree that no court, under the terms of the will, would be authorized to make such order until the debts and legacies before mentioned are paid, and necessarily in the result reached that the order is nugatory, and must be reversed, yet we disagree as to the capacity in which such executors held such property in trust, and the court which is to exercise control over them after such residue is ascertained.

It is the opinion of the writer that when the residue of the property is taken in trust, the executors, although named as such in the will, are testamentary trustees, and the jurisdiction over them, and the estate held in trust by them, belongs exclusively to the equity jurisdiction. According to my view, the duty to pay debts and legacies is strictly executorial, and when this is fully performed or accomplished, and the property is taken in trust by them for the purposes specified, and others thereafter mentioned in the will, they are trustees, and not executors, and subject to equity, and not to probate jurisdiction.

The will clearly contemplates a period of time when there shall be a separation of functions and duties,— when the duties of the executors as such shall end, and when, by reason of the trust invested in them by force of the will, they shall assume exclusively the character of trustees. (*Conklin* v. *Edgerton*, 21 Wend. 438; *Painter* v. *Clarke*, 13 Met. 220; *Wills* v. *Cowper*, 2 Ohio, 124; *Knight* v. *Loomis*, 30 Me. 204; *Layten* v. *Davidson*, 95 N. Y. 265; *Smith* v. *McConnell*, 17 Ill. 135; *Vardeman* v. *Ross*, 36 Tex. 111; *Greenough* v. *Wills*, 10 Cush. 576.)

The language of the will is: "After the payment of my debts, etc., I give all the residue, both real and personal, . . . . to my executors," etc. Here are words of direct devise of the legal estate to the executors, who, after performing the duties of the trust confided to them in respect to the plaintiff and minor children, are "to sell and dispose of the property placed in their hands by this instrument, when it is the best interest of the estate to do so," when the time, under the will, for distribution comes.

It results, according to my view, that the county court is without jurisdiction to make any order in the premises, but that when the residue is definitely ascertained, and the trust vested, the duty of collecting the rents and profits, and of paying the sum or sums necessary to support the plaintiff and the minor children, is devolved upon the holders of the trust, — the trustees, — and the jurisdiction over the estate so held in trust and of the trustees is wholly of equity cognizance.

It is due, however, to say, although there is other provision made in the will for the plaintiff, that the testator evidently contemplated a speedy settlement of his estate by the payment of his debts and the legacies mentioned and bequeathed, so that the residue of the estate from which such support is to come may be definitely ascertained and be devoted to the purposes specified; yet it was indicated at the argument that there had been unnecessary delay, and perhaps neglect, in not settling the estate sooner; but in view of the fact that the widow and children have received certain sums for their support, and that it was needed, it is highly expedient that these debts and legacies, if not paid, be paid at once, and the estate settled, so that the objects of the testator's bounty may receive the proper sum or sums as may be necessary out of the income, but not in excess of it, for their support and maintenance.

The decree is reversed.

Strahan, J., concurring specially.—I am unable to concur in the conclusion intimated that the county court is without jurisdiction to ascertain the amount of support to be allowed Mrs. Jasper under the will, and to order its payment. It is true, the amount of the allowance must be confined to "income," and cannot be drawn from any other source; still, I have no doubt by the constitution and laws of this state the county courts are vested in such cases with full jurisdiction over the whole matter of wills, and the direction of the payment of bequests and legacies, and that such jurisdiction continues from the grant of letters testamentary until the performance of the last act necessary to a full and complete execution of the will. By article 7, section 12, of the constitution of this state, it is provided: "The county court shall have the jurisdiction pertaining to probate courts and boards of county commissioners, and such other powers and duties, and such civil jurisdiction not exceeding the amount or value of five hundred dollars," etc.; and by section 895, Hill's Code, exclusive jurisdiction, in the first instance, is vested in the county courts pertaining to a court of probate, among other things,—1. To take the proof of wills; 2. To grant and revoke letters testamentary of administration and of guardianship; 3. To direct and control the conduct, and settle the accounts, of executors, administrators, and guardians; 4. To direct the payments of debts and legacies and the distribution of the estates of deceased persons. I cannot doubt that the object and effect of this provision of the constitution and the statute cited vested in the several county courts of this state a jurisdiction which is exclusive over all the subjects specified, and that the matter now before the court is one of the subjects of jurisdiction specified therein. The jurisdiction of the court is co-extensive with the trusts; it is to continue as long as the executorship continues; all the

duties imposed by the will are executorial, and the bond given by the executor covers all of his conduct as such, and protects the estate from the time of his qualification until his final discharge, or until the trust is closed. Any other construction destroys the harmony and effectiveness of our probate system, and perpetuates the very evil that its adoption was designed to eradicate. I have not been able to examine the adjudged cases from other states under a constitution and laws similar to our own, for the reason the same are not accessible at this time. I concur in the reversal of the judgment, for the reason that the order for the payment of the amount for support was prematurely made, but think the county court alone will have authority to act in the premises as soon as the time specified in the will shall have arrived for the payment of such sum or sums as may be necessary from the income for the support of the widow and minor children. I may add that I also fully concur in the intimation given in the opinion of my associates that it is the imperative duty of the executor to so administer his trust that the sums payable to the widow for her support and that of the minors shall be available at once.