BRUNSON, ADM., *v.* MARTIN ET AL., EXECUTORS.

[No. 18,607. Filed January 13, 1899.]

WILLS.—*Construction.—Use of Income of Estate for Life.—Residuum.* —Testator bequeathed to his wife the use of all his property both real and personal for and during her lifetime, with a provision that "she shall use but the rents and profits of said estate, or so much thereof as she can make profitable use of." In a further provision of the will the testator enjoined upon his executors the duty "to assist her and attend to all her business if she so desired." *Held,* that the will gave the widow only a right or power to use the income, and, upon her failure to avail herself of that right, the rents and profits remaining with the executors at her death went to testator's residuary legatees.

From the Jay Circuit Court. *Affirmed.*

*W. H. Williamson, J. W. Thompson* and *S. A. D. Whipple,* for appellant.

*S. W. Haynes, G. W. Hall* and *J. J. M. La Follette,* for appellees.

JORDAN, J.—Appellant, as the administrator of Margaret Stoltz, instituted this proceeding by a petition in the lower court, making the appellees, Martin and Stoltz, executors of the last will and testament of George Stoltz, deceased, and certain legatees under said will, parties defendant to the action. By his petition, appellant sought to secure an order of the court directing the executors of George Stoltz to pay over to him, as administrator of Margaret Stoltz, deceased, $8,000 which they had in their hands at the date of said Margaret's death. A demurrer for insufficiency of facts was sustained by the court to this petition, and a final judgment rendered thereon against appellant, from which he prosecutes this appeal.

The facts set out in the petition may be thus summarized: Apppellant is the administrator of the estate of Margaret Stoltz, who died intestate in 1896, leaving surviving her no children, but leaving as her heirs certain other numerous persons mentioned in the petition. The appellees, Frederick Martin and Daniel Stoltz, are the executors of the last will of George Stoltz, who died in 1891, leaving no children, but leaving as his widow said Margaret Stoltz, and also leaving surviving him certain brothers and sisters, and other persons related to him by consanguinity. In 1889 he executed the will in controversy, and the parts thereof material to the question mooted in this case are the following:

"Item 1. I give and bequeath to my beloved wife, Margaret Stoltz, the use of all my real and personal property during her lifetime, that she may use it in any manner she knew me to use it, also for religious and charitable uses, and my executors shall assist her and attend to all her business if she shall so request. She shall use but the rents and profits of said estate, or so much thereof as she can make profitable use of."

"Item 2. I give and devise the farm on which we now live, containing ninety and seventy-five one-hundredths (90 75-100) acres, and situated in Wabash township, in Jay

county, Indiana, to Louis P. Fenning and Mary A. Fenning, his wife, and her heirs, subject to the life estate of my said wife, Margaret, as set out above, and subject to the payment by said Louis P. and Mary A. Fenning to Caroline Martin (or her heirs), wife of George Martin, fifteen hundred ($1,500) dollars, and to Adam Stoltz, my brother, or his heirs, fifteen hundred ($1,500) dollars. Five hundred dollars shall be paid to each of them one year after the death of my said wife, or, should I survive her, one year after my death, without interest, and five hundred dollars to each of them at the end of each year, with 6 per cent. interest, until all is paid."

By item three the testator bequeathed to his sister certain property, as therein mentioned, and by items four, five, six, and seven he devised certain other property and money to other legatees, who apparently were the relatives of his said wife, Margaret. By item eight he gave $10 to his brother, Philip Stoltz.

Items nine and ten of the will are as follows:

"Item 9. The residue of my estate, after the payment of all debts and funeral expenses, I give and bequeath to my sisters, Caroline Martin and Margaret Mueller, and to my brother, Adam Stoltz, or their heirs.

"Item 10. I hereby appoint as executors of the foregoing will Frederick Martin and Daniel Stoltz with the hope and request that they will attend to the wants of my wife while she lives, should she survive me, and be faithful in carrying out all they know to be my will, for which they shall be paid a fair recompense here and approving conscience toward God."

Appellant's decedent, Margaret Stoltz, elected to accept the provisions made for her in her husband's will in lieu of her rights in his property under the law. This will was duly probated in August, 1891, in the Jay Circuit Court, and appellees, Martin and Stoltz, were duly qualified as executors

and took upon themselves the discharge of the duties of said trust and at the commencement of this action were still acting in the discharge of such duties.

The petition alleges that the personal property of the testator, George Stoltz, which came into the hands of his executors, consisted, in part, of horses, cattle, sheep, wagons, and farm implements, wheat, corn, and other cereals, of the value of $2,000, and also consisted, in part, of accounts, notes, bills, and choses in action, of the value of $10,000, said personal estate as an entirety aggregating $12,000. Personal chattels above mentioned, other than the notes, bills, and accounts, were sold by the executors at public sale, and the money arising therefrom, together with that arising out of the interest, on notes, bills, and accounts, was received by the executors, and by the latter was loaned and reinvested, and by their management of the said estate, in this manner, there was created or arose by way of interest, rents, and profits, from the property, between the death of the testator and the demise of his said wife, a fund amounting to $8,000, which remained unused in their hands at the date of Margaret Stoltz's death, which fund, when combined with the corpus of the personal estate, amounted to $20,000, remaining in the hands of these executors at the death of the said widow.

No part of this income of $8,000, accruing as aforesaid, was paid over to the said Margaret Stoltz, or accounted for to her by the said executors; neither does it appear that she, at any time during her life subsequent to the death of her husband, exercised the power, under his will, to use any part of said income as it accrued, or made any demand or claim whatever upon said executors that they pay over to her or account to her for any portion thereof. Neither does it appear, from any of the facts set out in the petition, that the said Margaret contracted any debts upon the faith that the said income so accrued should be applied in payment thereof; and, for aught appearing to the contrary, she at no time ex-

ercised any power or right to receive the said money so accrued from the said executors for her use, or that she required any part thereof as necessary for her support and maintenance during her life; and, for anything appearing to the contrary, the only purpose for which appellant, as her administrator, is seeking to secure the payment of the money to him by the executors of George Stoltz is that it may be distributed through him as a medium to the numerous heirs of his decedent, none of whom are shown to be of any blood relation to the said testator.

Appellant averred in his complaint that when he inventoried the property belonging to the estate of his decedent, Margaret Stoltz, he omitted from said inventory the money or fund now in controversy, for the reason that at that time he had no knowledge of the facts, but that prior to instituting this action he demanded that appellees, as executors, pay over to him the said fund or money, for which he now sues, and that they account to him, under the will of the said testator, for the amount due to the estate of his decedent, all of which, it is alleged, they refused to do. The claim of counsel for appellant is that, under the will in question, Mrs. Stoltz, widow of the testator, was given an absolute life estate in all of his property and that she was entitled to all of the rents, profits, and income that arose out of the real and personal property, after the death of her husband until her death, whether she actually received it or not, and that any amount not claimed or turned over to her by said executors prior to her death must be paid by them to appellant, as her administrator, and pass into and become a part of her estate.

Upon the other hand, counsel for appellees contend that, inasmuch as Mrs. Stoltz failed in any manner to avail herself of the power to use the income accruing from the money at interest and from the rents and profits of the estate given her under her husband's will, therefore, the part not used or claimed by her during her life which remained in the hands

of the appellees, as the executors of the will of George Stoltz, belongs to his estate and passes to his residuary legatees.

The question propounded for our decision, under the facts and the will set out in the petition, is, what rights did the testator intend to confer upon his wife under the provisions of his will?

It is apparent, we think, that the draftsman who prepared the will in controversy was not skilled in the drafting of such instruments, and perhaps it may be said he employed, in some respects, inapt words, in expressing the meaning of the testator. The question, therefore, involved in this appeal depends upon the interpretation of the will of George Stoltz. In the construction of a will, courts seek to ascertain the intention of the testator, as this is the guiding rule or canon of interpretation affirmed by the authorities from Blackstone down to the present time. As the authorities sometimes state it, "The intention of the testator is the pole star," and, in a judicial search to ascertain this intention, courts will look to and consider the entire instrument, and isolated facts and clauses of the testament will not be selected, and their meaning determined, without considering them in connection with other parts of the will. Neither will such isolated parts or clauses be permitted to control the general tenor of the instrument in regard to the testator's intention. Unless some principle of public policy or some unyielding legal rule interferes, the intention of the testator, when ascertained, must be observed and enforced by the court. It is also a canon of construction relative to wills that the court, when necessary, may also, in addition to considering the provisions of the will itself, look to and consider the circumstances under which it was executed both in respect to the condition of the testator and also that of his property and family, and the court will endeavor, under such circumstances, as far as possible, to put itself in his position. *Eubank* v. *Smiley*, 130 Ind. 393; *Nading* v. *Elliott*, 137 Ind. 261; *Bullerdick* v. *Wright*, 148 Ind. 477.

As the facts disclose in the case at bar, neither George Stoltz, the testator, nor his wife, had any children. He seems to have had several brothers and sisters whom he made legatees under his will. His wife also, as revealed by the complaint, had numerous relatives of her own blood and some of these, by the provisions of the will, were made the objects of her husband's bounty. After declaring what the several legatees mentioned were to receive, the testator provided, by item nine of his will, that, after the payment of all debts and claims against his estate, his two sisters, Mrs. Mueller and Mrs. Martin, and his brother, Adam Stoltz, were to be the beneficiaries of the residuum of his estate.

By the first item of his will, the testator gave to his wife, Margaret Stoltz, the right to use all of his real and personal property during her life in like manner as she knew him to use it, including religious and charitable purposes. The testator, however, declares at the close of item one, in emphatic language, that *"she shall use but the rents and profits of said estate or so much thereof as she can make profitable use of."* (Our italics.) He also, in the same item, enjoins upon his executors on the request of his wife to assist her and attend to all of her business. By item two, he devised the home farm to Fenning and wife, subject to the life estate of his wife "as above set out," and provided therein, in effect, that these devisees, who appear to have been occupying the home farm at the time the will was executed, should continue to occupy it upon the same terms that they then did for the purpose of keeping his wife, in the event she survived him, and for the payment of taxes accruing against the premises. Or, in other words, the Fennings, after the death of the testator, and during the life of his wife, were to continue in the use and occupation of the home farm in consideration that they kept Mrs. Stoltz and paid the taxes upon the farm.

In item ten, he expresses the hope and requests that his executors will attend to the wants of his wife during her life, and that they be faithful in carrying out all which they know

to be his will.  The desire of George Stoltz, the testator, to provide fully for the needs of his wife, in the event she survived him, is clearly and strongly evinced by the provisions of his will, and that he intended that she should be liberally supplied with all that might be necessary for her wants and comfort during her life, there can be no doubt.  By item one of the will it is evident that the testator only intended to bequeath to his wife the right to the use of his real and personal property for life, and that he desired that she use it in the manner he had, including donations in the furtherance of religious and charitable purposes.   To define his meaning more particularly, or express himself, in regard to the right or power which he intended to confer upon his wife, under his will, he declares, in effect, and in unmistakable terms, that "she shall use but the rents and profits of said estate" or in other words, so much of such income as she can profitably use.   The word "use," as employed in this will, is of potential significance, and must be given its full force and effect.

As a general rule, the use of a thing does not mean the thing itself, but means that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof.   See Anderson's Dictionary of Law, p. 1069.   If the thing to be used is in the form or shape of real estate, the use thereof is its occupancy or cultivation, etc., or the rent which can be obtained for its use.   If it is money or its equivalent, generally speaking, it is the interest which it will earn.   As we have heretofore said, in the interpretation of the will in question, it is the intention of the testator, and his alone, which we are required to seek. A will, in its construction, is not open to the same rule which applies to mutual contracts from which both parties expect to derive some benefit.   In such a case the court seeks to ascertain the intention of both parties to the contract, and anything which it can be said that either party did not agree to cannot be considered within the intention.   Not so, however, with a will, for it is but the act of the testator, and he alone fixes the terms and conditions to please himself, while those

who are the objects of his bounty simply accept or reject that which is bestowed upon them.

Manifestly, when the provisions and terms embraced in item one are construed together as a whole, it is disclosed that the intention of the testator was to restrict the right of his wife to the use during her life of so much of the income of his estate accruing after his death as she could put to a profitable use or purpose; the adjective "profitable" no doubt being employed in the sense of "beneficial" or "advantageous," the testator possibly intending to be understood thereby that his wife should have the right to use so much of the income of his estate as she could, for her own benefit, and in the furtherance of religious and charitable purposes. We cannot ignore the words, "Give and bequeath to my beloved wife * * * the use of all of my real and personal property during her lifetime," and the further provision, in the same connection, that, "she shall use but the rents and profits of said estate, or so much thereof as she can profitably use." By this language and expression the testator certainly intended that his wife should have, not an absolute estate in the income, but only the use of so much thereof during her life in the manner provided. *Goudie* v. *Johnston*, 109 Ind. 427.

The executors of the will of George Stoltz were directed therein to assist his wife and attend to all her business and wants while she lived. If they, as his executors, were to attend to the business and wants of his wife during her life, he evidently intended that their trust should at least continue until her death, and that they, as such executors, should have the management except as it may be said to have otherwise been impliedly directed in the will of the corpus of his estate from which the income for the use of his wife was to be derived. The gift to the wife, under the will, was not absolutely of the income in question, but it was the gift of the right or power, if she desired to exercise it, to use during her life the income arising out of the property mentioned or set apart by the testator for that purpose, and it is clear that,

like any other power, it must be exercised by her prior to her death, in order to vest absolutely in her such property rights in the income as would  pass to her estate at her death. Therefore, appellant, as her administrator, under the circumstances, does not occupy the position of his decedent, were the controversy to the fund in dispute between the latter and the executors of her husband's will.

It may be said, however, we think, that the question as to the extent to which Mrs. Stoltz might have exercised the power so conferred upon her, in respect to the amount of the income that she would use, was a matter left by her husband, under his will, largely to her own discretion to be exercised within the spirit or intent of the bequest, assisted by his executors in the event she saw proper to invoke their aid. If she had exercised the right which the will gave her during her life to use this income, as it accumulated in the hands of the executors of her husband's estate, and had invested it in other property or reduced it to her possession or control, prior to her death, for the purpose of using it, a different question would be presented; but the facts do not reveal that she ever exercised, or attempted in any manner to exercise, the power which the will gave her to use the money constituting the income or fund in question, nor is she shown ever to have made any demand for its use, nor does it appear that prior to her death she contracted any debts in reference thereto.   She seems to have been satisfied in not exercising her right, and apparently was contented to leave the income to accumulate, unused by her, in the hands of the executors of her husband's will.   The right or power to the use of this fund she certainly was required, under the circumstances, to exercise during her life, and, as she failed to do so, prior to her death, and there being no facts shown in the petition that would entitle her administrator to exercise it after her death, the demand of the appellant must fail.   *Ford* v. *Ticknor*, 169 Mass. 276, 47 N. E. 847; *Nading* v. *Elliott*, 137 Ind. 261.

It cannot be successfully asserted that there is anything in

the will or in the circumstances surrounding the testator at the time of its execution, so far as the same are disclosed, which indicate that he intended that the income arising from his estate, remaining unused or unclaimed by his wife in the hands of his executors at her death, should be turned over by them to her administrator, and thereby pass into her estate for the benefit of her heirs, to the exclusion of his brothers and sisters, kin of his own blood, whom he had made his residuary legatees. Appellant's decedent, therefore, having failed to exercise in any manner her right to the fund in controversy, during her life, but leaving it, as she did, unused and unclaimed in the hands of the executors of her husband's will, it must be considered and held to be a part of his estate, and, after the payment therefrom of all debts and claims against said estate, the remainder thereof must be distributed to the residuary legatees, as provided by his will. *Holbrook* v. *McCleary*, 79 Ind. 167; *Heilman* v. *Heilman*, 129 Ind. 59.

It follows that appellant, under the facts set out in his petition, is not entitled to have the money in question paid over to him by the appellees for the benefit of his decedent's estate, and the court therefore did not err in sustaining the demurrer.

Judgment affirmed.