Argued March 28, decided April 25; rehearing denied June 13, 1911.

# LOVE v. WALKER.

## [115 Pac. 296.]

WILLS—CONSTRUCTION—CIRCUMSTANCES CONNECTED WITH MAKING OF
WILL.

1. The court, in construing a will to ascertain the intention of testator, will take into consideration the ability of the person who drew the will to express the terms, objects, and purposes desired.

WILLS—CONSTRUCTION—LIMITATION OVER.

2. Where a devise to a testator's son for his sole use, with gift over in case of his death without issue living at the time of his death, creates a life estate in the son, the limitation over is not indefinite, but takes effect at the son's death without issue surviving.

WILLS—ESTATES ACQUIRED—LIMITATIONS.

3. Under Section 7103, L. O. L., the absence of the word "heirs" from a devise does not necessarily imply that a life estate only is given, and, where a devisee takes an absolute estate, any attempt to limit the fee will not be sanctioned.

WILLS—DEVISEES—TIME OF ASCERTAINMENT OF CLASS.

4. Testator devised real estate to his son, who at the time of the execution of the will was a widower having two grandchildren, the children of a deceased daughter. Subsequently he married; but there was no issue of the second marriage at the time of the execution of the codicil, declaring that the devise to the son should be for his sole use independent of his wife, and that in the event of his death without issue living at the time of his death the devise should go to others. The son at the time of the execution of the codicil was 52 years of age and his wife 46. *Held* that, in view of the presumption of the possibility of issue, it was unreasonable to suppose that testator desired to exclude issue subsequently born and living at the son's death from taking a share to which each would be entitled, based on the ratio determined from the number of children and grandchildren.

WILLS—ESTATES ACQUIRED—VESTED OR CONTINGENT.

5. Testator directed his executors to hold his real estate until a designated date, at which time they should divide the same into parts, each of which should be given to persons named. The executors were empowered to lease the real estate, collect the rents, make necessary repairs, and pay taxes. *Held,* that the executors merely held the possession of the real estate, and that their duties were discharged when they divided the premises as required, and prior to such division the beneficiaries took a vested estate in fee.

WILLS—INTENTION OF TESTATOR.

6. The intention of testator governs in the construction of his will, and, where a testator's design can reasonably be ascertained, it controls.

WILLS—CONSTRUCTION—ESTATES ACQUIRED—"USE."

7. Testator directed his executors to hold his real estate until a designated date and then divide it into shares, and he gave a share to his son. By a codicil he declared that the devise to the son should be

for his sole "use" independent of his wife, and that, on his death without
issue living at the time of his death, the devise should go to others.
*Held,* that the son acquired only a life estate; the word "use" meaning
the transfer of an interest in land for life.

WILLS—CONSTRUCTION—DISINHERITING HEIR.
8. An heir can only be disinherited by express devise, or necessary
implication.

WILLS—CONSTRUCTION—DEVISEES—"ISSUE."
9. Testator directed his executors to hold his real estate until a
designated date and then divide it into shares, and he gave one share
to his son, and provided that it was his purpose to distribute his prop-
erty equally between his children and to the heirs of those of his children
who were dead. By a codicil he declared that the devise to the son
should be for his sole use, independent of his wife, and that on his
death without issue living at his death the devise should go to persons
designated. *Held,* that the word "issue" in the codicil included grand-
children.

WILLS—ESTATES CREATED—VESTED REMAINDER—AFTER-BORN CHILDREN
—EXECUTORY DEVISE.
10. Grandchildren in being at the time of the execution of the codicil
became vested as remaindermen with a fee at the death of testator,
subject to the son's life estate and to the possibility of their interest
being diminished by the birth of other issue, and there was a remainder
over by way of executory devise to the designated persons in case the
son died without issue surviving.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Green C. Love against Emma J.
Walker, Alsisstrees L. Peacher, Nancy M. Finke, Sarah
R. Anderson, Lena G. Richmond, Sidelia F. Hohmann,
Lewis G. Stafford, Mary G. Stafford, Hazel King, Belle
Robinson, Frank Soners, Inita Soners, Dixon and Jacob
Samuels to determine an adverse interest in real prop-
erty. The facts are that on January 5, 1899, a last will
and testament was made and published, as follows:

"Know all men by these presents: That I, Lewis Love,
of Portland, Multnomah County, Oregon, being over the
age of 80 years, and being of sound and disposing mind
and memory, do make and declare this as my last will
and testament, in manner and form following, that is to
say: I make, constitute and appoint T. T. Struble, Philo
Holbrook and H. C. Breeden executors of this my last
will and testament, and request and direct that no bonds

or undertaking be required of them as such, nor of them as trustees to hold my estate to a certain time hereinafter mentioned. I direct that all of my just debts, including funeral expenses and the expenses of administration, be paid by my executors. In order that my purpose and ownership of property shall be clearly understood, I hereby preface my devises and bequests as follows: I have made no deed to any person or persons to any real or personal property to take effect at or after my death. I made five deeds to my children and grandchildren September 21, 1894, which were executed and acknowledged before T. T. Struble, notary public. I made eight deeds to my children, grandchildren and grandchild December 28, 1896, which were also acknowledged before T. T. Struble, notary public; other than these mentioned deeds I have made none since the first mentioned. ones of date September 21, 1894. I am the owner absolute of the following real property in the city of Portland, Oregon: Lots 1 and 2, block 117, city; lot 4, block 116, city; lot 3, block 10, city; north half lot 2, block 10, city; lot 8, block 111, city; south half of lot 2, block 4, city; the east 75 feet and 11 inches of the south half of lot 4, block 3, city; the north half of lot 4, block 3, city; the south half of lot 3, block 3, city. I have never made a deed to any person or persons of any part or piece of this property whatever. I also own 757 acres, more or less, of land in sections 10, 11, 14 and 15, township 1 north, range 1 east, Willamette meridian; a portion of this land is outside of and a portion inside of the city limits of Portland, Oregon. I have made no deed to any of this acreage to any person or persons at any time, except for Columbia Cemetery. It is my purpose to will at this time all of my property, personal, real and mixed, to my legal heirs in the same proportion as the law would convey the same to them in the absence of any will by me, reserving only the burial place where my wife is now buried, and a strip of land two feet in width adjacent thereto on the west, north and east of said burial spot, and I hereby set aside said burial place (spot) and said two feet of land adjacent thereto forever as a resting place or burial spot for my wife and myself; said burial place joins Columbia Cemetery on the northwest corner, which said cemetery is in section 10, township 1 north, range 1 east, Willamette meridian.

Sig. 4

"My will is and I direct that my estate shall be divided into six (6) shares or parts of equal value, to be disposed of in the following manner, viz: First. I give, devise and bequeath to my son, Fred D. Love, one of said shares or parts. Second. I give, devise and bequeath to my son, Green C. Love, one of said shares or parts. Third. I give, devise and bequeath to my son, Lewis P. Love, one of said parts or shares. Fourth. I give, devise and bequeath to my grandson, William King, a son of my deceased daughter, Malinda J. Shepherd, one-third part of one of said shares or parts. Fifth. I give, devise and bequeath to my granddaughter, Matilda Shepherd, wife of James Shepherd, and a daughter of my deceased daughter, Malinda J. Shepherd, one-third part of one of said shares or parts. Sixth. I give, devise and bequeath to my great-granddaughter, Hazel King, who is a minor child, and a daughter of Albion King, deceased, who is a son of my deceased daughter, Malinda J. Shepherd, one-third part of one of said shares or parts. Seventh. I give, devise and bequeath to my daughter, Mary C. Stafford, one of said shares or parts. Eighth. I give, devise and bequeath to the children of my deceased son, William Love, one of said shares or parts of my estate to be divided among said children as follows: To L. W. Love, the one-fifth part of said share; to John A. Love, the one-fifth part of said share; to Ulysses G. Love, the one-fifth part of said share; to Charles W. Love, the one-fifth part of said share; to Frank P. Love, the one-fifth part of said share.

"It is my will and purpose that my estate shall be kept intact and not distributed to my devisees till January 1, 1907, (nineteen hundred and seven). I direct that my executors shall proceed to administer upon my estate at once after my demise, and having in due time closed up my estate as executors, that then my estate shall pass to them as trustees, to be held in trust for my said devisees till January 1, 1907, and managed by them as such trustees till the time of final distribution. I direct that my trustees, T. T. Struble, Philo Holbrook and H. C. Breeden, from time to time as the receipts of my estate may exceed the expenditures, such portion thereof as in the judgment of my said trustees can safely be distributed and paid to the devisees *pro rata,* not oftener than two times in each twelve months. I direct that my trustees make final dis-

tribution of my estate on January 1, 1907, or as soon thereafter as practicable, and if my devisees can agree, said final distribution can be by division of my property by such agreement, but if they cannot so agree, then my trustees shall make a division of my property according to the shares and parts of shares in my estate and my devisees can cast lots for their several interests either in person or by their lawful representatives. Be it remembered, however, that in the administration of my estate by my executors, and before they close up my estate, and it passes to them as trustees, all personal property is to be sold, and the proceeds of such sale will belong to and become a part of my estate.

"In their trust my trustees are hereby empowered to rent property and collect rents, make necessary repairs to property, pay taxes, or to be more explicit, they are empowered hereby to collectively do all acts that I could do were I living, necessary to protect and keep my estate intact for my devisees hereinbefore mentioned. Should a vacancy occur in my trustees, then the remaining ones or one are to act and carry out this trust. This is my only will, but I now refer to a canceled will made by me April 13, 1896, for the purpose of corroborating the idea that it was always my purpose to distribute my property equally between my several children and to the heirs of those of my children who had died, leaving children or grandchildren.

"Be it remembered that reference to said canceled will shall not make it a part of this will, but only show what my intentions have always been toward my heirs. Reference to the fact in this will that I am the owner of and have made no deed to certain property, is because I have been informed, reliably, of one fraudulent deed to certain valuable property purporting to have been made by me and also have heard rumors of the existence of another fraudulent deed. I pronounce and declare all such deeds or deed as fraudulent; and any and all claims of any person or persons of having genuine deeds or titles to any of the property hereinbefore described, are false and villainous, and I hereby instruct my executors and trustees to contest any such claims to the uttermost, that my property may be kept intact and saved to my lawful heirs as herein devised. And lastly, I do hereby revoke all other wills heretofore made by me, and declare this and

no other to be my last will and testament, and desire that of this proof shall be taken and admitted to probate as a muniment of title.

"In witness whereof I have hereunto set my hand this 5th day of January, 1899. (Signed) Lewis Love. (Seal.)

"The above instrument was at the date thereof signed, sealed, published, and declared by the said Lewis Love as and for his last will and testament, in presence of us, who at his request, and in the presence of each other, have subscribed our names as witnesses thereto.

(Signed) "O. P. S. Plummer,
                      "Residing at Portland, Oregon.
            "Edward Holman,
                      "Residing at Portland, Oregon."

At the time the will was made, plaintiff was a widower, and two children of a deceased daughter were his only living issue. He subsequently remarried, however; but no issue has resulted from the union. A supplemental testament was made, of which the following is a copy:

"I, Lewis Love, of Portland, Oregon, do make this codicil to my will. I hereby expressly confirm my last will, dated January 5, 1899, excepting in so far as the distribution of my property is changed by this codicil. First. I hereby will, decree and declare that the devise or legacy to my daughter, Mary C. Stafford, in my said will, shall be for her sole and separate use, independent of her husband at all times, and that at her death the said devise or legacy to her shall go to her children, share and share alike. Second. I hereby will, decree and declare that the devise or legacy, in my said will, to my son, Fred D. Love, shall be for his sole and separate use, independent of his wife at all times, and that at his death the said devise or legacy shall go to his children, share and share alike. Third. I hereby will, decree and declare that the devise or legacy in my said will, to my son, Green C. Love, shall be for his sole and separate use, independent of his wife, at all times, and that in case of his death without lawful issue, born alive and living at the time of his death, then the said devise or legacy to him shall belong and go the remaining devisees of my said will in proportion as they hold of the shares or parts of my said

will. Lastly. I declare this is a codicil to my will, and
that this the only codicil that I have made, and I hereby
declare my said will of date January 5, 1899, to be my
last will and testament and also hereby re-affirm the
same in every particular, except as modified by this
codicil, which codicil is to be attached to the said will.
Witness my hand and seal this 26th day of February,
1902.

"(Signed) Lewis Love. (Seal.)"

The testator died July 3, 1903, and, his will and codicil
having been probated and the estate settled, the trustees
set off to plaintiff the real property described in the
complaint. Several of the devisees executed to plaintiff
deeds of any possible interest they might have in his
allotment; but, others of them having asserted adverse
claims thereto, this suit was instituted to determine the
issue, and the cause having been tried, and the relief
prayed for in the complaint granted, most of the defend-
ants appeal from the resulting decree.     REVERSED.

For appellants there was a brief with oral arguments
by *Mr. William M. Gregory* and *Mr. Dan J. Malarkey.*

For respondent there was a brief with oral arguments
by *Mr. Henry J. Bigger* and *Mr. Wallace McCamant.*

MR. JUSTICE MOORE delivered the opinion of the court.

MR. JUSTICE BURNETT, dissenting.

It is maintained by plaintiff's counsel that the will
gave to their client an estate in fee in the premises; that
the codicil does not clearly evince an intention to abridge
such absolute interest; that the condition stated therein,
associated with the contingency of dying "without law-
ful issue born alive and living at the time of his death,"
does not mean the end of plaintiff's life at any time, but
his decease prior to that of the testator, or before a parti-
tion of the real property. It is insisted by the defend-
ants' counsel, however, that the clause in the codicil, "in

case of his death," means plaintiff's dissolution at ·any time prior or subsequent to that of the testator or before or after January 1, 1907, when the land was to be divided, whereby they have possible interests in the real property involved, and that in rejecting their claims an error was committed.

An irreconcilable conflict of judicial utterance exists as to the occurrence of a possible uncertain incident such as is referred to in the third clause of the codicil. In speaking of a similar testamentary direction, a textwriter says:

"The general rule is that, where the contest is silent, the words referring to the death of the prior legatee, in connection with some collateral event, apply to the contingency happening as well after as before the death of the testator." 2 Jarman, Wills (6 ed.) 719.

See, also, Rood, Wills, § 653. Another author, referring to the same subject, observes:

"The intention of testator that dying without issue may mean a death after the death of testator may also be inferred from other provisions in the will. Thus, a provision that, in case of the death of the beneficiary without issue, her share shall revert to the estate of testator, shows that he contemplates her death without issue after his own. So a provision that certain lands shall pass to testator's sons after the death of testator's widow, provided that if either dies without issue his estate shall pass to another, shows that the death without issue meant a death after that of testator." Page, Wills, 798.

In the excerpt last quoted it will be observed from the allusion to a testator's "estate," which means the property he might leave at his death, and from the reference to a testator's "widow" which necessarily signifies her expected survivorship, the intention is deduced that the contingency specified is supposed to occur after the testator's death. In the case at bar it will be remembered that the codicil declares that, if plaintiff die without lawful issue him surviving, "then the said devise or legacy to

him shall belong and go to the remaining devisees of my said will in proportion as they hold of the shares or parts of my said will." As the remaining devisees could not take any estate or interest in the testator's property until his death, the word "hold," as used in the third clause of the supplemental testament, manifests an intention that the declaration of the contingency of plaintiff's death without issue meant his decease subsequent to that of the testator. If, however, the condition of death without lawful issue living related to January 1, 1907, when the real property was to have been partitioned, it may be supposed from the testator's advanced age when the will was made that he could not reasonably have expected to live until that time, and that at his departure the devisees would have become vested with an estate in the lands which thereafter they could hold within the meaning of that word.

A devise of real property is deemed to be a gift of all the testator's estate in the premises subject to his distribution, "unless it clearly appears from the will that he intended to devise a less estate or interest." Section 7344, L. O. L.

"All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true interests (intent) and meaning of the testator in all matters brought before them." Section 7347, L. O. L.

1. In the examination of a manuscript, in order to ascertain the intention of a party, courts will take into consideration the ability of the person who drew the instrument correctly to express the terms, objects, and purposes desired. Thus in *Saunders* v. *Saunders' Adm'r*, 20 Ala. 710, 716, in construing a marriage contract it was held that the intention of the parties was to be gathered from an examination of the entire agreement, though the conclusion reached was contrary to the express provision of a particular clause; the court saying:

"This rule we apply in the present case with the less hesitation, for the reason that the settlement bears upon its face the most palpable marks that it was drawn by a person who was not only entirely ignorant of legal forms, but incapable of expressing his meaning with clearness and precision."

In the case at bar the testimony shows that the codicil was written by a person evidently unable to express in proper legal form the testator's directions. If the third clause of the supplemental testament transferred an estate in fee to plaintiff, his wife has an inchoate right of dower in the premises, which interest, if she survives him, will become a life estate of an undivided one-half unless she is lawfully barred thereof. Section 7286, L. O. L. If the absolute estate to her husband were not cut down by the codicil, she could incumber the land by incurring expenses for the support of the family (Section 7039, L. O. L.), thereby endangering all the real property, except the homestead, to sale on execution (Section 221, L. O. L.). The plaintiff could also convey the premises to her in fee. Section 7036, L. O. L. The possible consequences suggested could be partially thwarted by construing the gift to plaintiff "for his sole and separate use, independent of his wife at all times," as manifesting an intention on the part of the testator to bestow a life estate only. As all property of the judgment debtor, except the homestead, is liable to execution (Section 227, L. O. L.), it follows that, if plaintiff acquired a life estate in the real property, such interest might be subjected to all the incidents indicated, except dower, so that, in all other particulars, the attempt to restrict the rights of plaintiff's wife was almost unavailing. The codicil makes no arrangement for plaintiff's lawful issue in case they survive him; but, if he took a fee in the land, no provision to that effect was essential.

2. If he were given a life estate, however, and his grandchildren took a fee conditional with a remainder

over as an executory devise in case of their death prior to his, and such was the testator's intention, his purpose might in the greater part be effectuated.

The limitation over is not indefinite, but takes effect at plaintiff's death without lawful issue him surviving. 17 Am. & Eng. Enc. Law (2 ed.) 564. If he took a fee in the lands, such interest would formerly be reduced by the limitation over, upon a definite failure of issue, to an estate in fee tail. *Hill* v. *Hill,* 71 Pa. 173 (15 Am. Rep. 545). It has been suggested, however, that the statutes of this State, permitting alienation of whatever interest a grantor has in real property, impliedly repealed the statute *de donis,* which ancient enactment converted estates in fee simple conditional into estates in fee tail: *Rowland* v. *Warren,* 10 Or. 129.

3. The absence of the word "heirs" from the codicil does not necessarily imply that a life estate only was given, for words of inheritance are not essential in Oregon to create or transfer an estate in fee simple (Section 7103, L. O. L.), so that, if plaintiff took by the codicil an absolute estate, any attempt to limit a fee upon such a fee will not be sanctioned.

It is argued by plaintiff's counsel that the third clause of the codicil is so different from the first and second, which were employed by the testator to cut down the fee-simple estate given by the will to Mary C. Stafford and Fred D. Love, that a purpose is disclosed to devise to Green C. Love more than a life estate. A comparison of the first and second clauses with the third will show that the differences observable are in the phrases "that at her death" and "that at his death" in the former, and "that in case of his death" in the latter, to which contingency is added the condition, "without lawful issue, born alive and living at the time of his death, then the said devise or legacy to him shall belong and go to the remaining devisees of my said will in proportion as they hold of the shares or parts of my said will."

4. The testimony shows that when the codicil was made plaintiff was 52 years old and his wife 46, and for the time of their joint lives, or during his life if he should survive her and remarry, the law will presume the possibility of issue: *Hamilton* v. *Sidwell,* 131 Ky. 428 (115 S. W. 204: 29 L. R. A. (N. S.) 961), and note on the rule in *Shelly's Case,* 29 L. R. A. (N. S.) 961, 1021. In view of such presumption, it is unreasonable to suppose that the testator desired to exclude this son's lawful issue from taking the share to which each would be entitled if living at the time of plaintiff's death. As such issue would take a proportion of the share set off to Green C. Love, based on the ratio determined from the number of his children, his grandchildren would take the part of their mother by representation and not a full share in case other lawful issue survived plaintiff's death. These possible conditions and the manifest purpose of the testator to prevent plaintiff's wife from acquiring an estate in fee or a dower right to any part of the land evidently induced the difference noticeable in the codicil respecting the devises to Mary C. Stafford, Fred D. Love, and Green C. Love, each of whom in our opinion took only a life estate.

5. It will be remembered that the will directed the executors to sell the personal property and settle the estate, after which, as trustees, they were empowered to lease the real property, collect rents, make necessary repairs, and pay taxes; but, as they were required to protect and keep the real estate intact for the devisees, they were impliedly prohibited from selling any part of the premises. We conclude, therefore, that they never took the legal title to, but held the possession of, the land, and that their duties were fully discharged when they had divided the premises into six parts of equal value and set off the several shares to the devisees entitled thereto who at the death of the testator and prior to such apportionment

took, as tenants in common, a vested estate in fee in the
real property. The rule of construction prevailing in
most states of the Union is that a devise of a fee, coupled
with a condition that if the devisee die without issue the
estate is to go to others, means dying without issue in the
lifetime of the testator, unless a different intention is
manifest from the context of the will. "The presumption
that the contingency of dying without issue," says the
author of the exhaustive note to the case of *Lumpkin* v.
*Lumpkin*, 25 L. R. A. (N. S.) 1063, 1064, "is to be
restricted to testator's lifetime being fundamentally lim-
ited to cases where an absolute gift is made to the first
taker, in express terms or by implication, is not applicable
where the gift is clearly of a less interest."

No attempt will be made to reconcile the conflicting
decisions or to determine the weight of authority upon
the question of death of a devisee in connection with some
collateral fact, supposed to happen either before or after
the death of a testator, but the decision of this cause
will be placed on what is believed to be the purpose of
Lewis Love respecting the objects and the extent of his
bounty.

6. The intention of a testator is the guide in constru-
ing the terms of his last testament, and, if his design can
reasonably be ascertained, it controls the disposition of
his property: *Shadden* v. *Hembree*, 17 Or. 14, 20 (18
Pac. 572) ; *Jasper* v. *Jasper*, 17 Or. 590, 593 (22 Pac.
152) ; *Portland Trust Co.* v. *Beatie*, 32 Or. 305, 309 (52
Pac. 89).

If, after giving a fee to plaintiff, the will had also
included the third clause of the codicil, it is possible that
a presumption might be invoked that the condition of
dying without living issue would be construed to mean
the death of plaintiff before that of the testator, so that
on the happening of the latter event the absolute estate
would have become vested in Green C. Love of which

he could not have been deprived on account of any failure of issue him surviving. But, however this may be, the legal principle thus adverted to can, in our opinion, have no application to the case at bar, for in so far as the codicil conflicts with the will it is the last expression of a testamentary disposition of property, revoking the will to the extent of the disagreement in their provisions and preventing a construction of their terms with reference to each other.

7. Examining the will and codicil as each dovetails into and thus necessarily becomes a part of the other, and regarding plaintiff, who is the first taker, to have been the favorite object of the testator's bounty, and as such entitled to the benefit of every implication in his favor, but considering the conflicting provision of the codicil as revoking the will *pro tanto,* we nevertheless believe that the term "use," as employed in the supplemental testament and as modified by its other provisions, clearly evinces an intent on the part of Lewis Love to give to plaintiff a life estate only, since that word, when applied under similar conditions, generally means the transfer of an interest in land of that duration. 8 Words & Phrases, 7228; *Brunson* v. *Martin,* 152 Ind. 111 (52 N. E. 599) ; *Spooner* v. *Phillips,* 62 Conn. 62 (24 Atl. 524: 16 L. R. A. 461) ; *In re Metcalfe's Estate,* 6 Misc. Rep. 524 (27 N. Y. Supp. 879). The deduction that plaintiff took only a life estate is strengthened by the provision of the codicil which treats the premises to be partitioned to him as remaining undiminished at his death, thereby impliedly denying to him the right of alienation. The determination thus reached leaves for consideration the inquiry of who were intended as the devisees in fee of the land, and what is the order of their respective rights.

8. It is a well-recognized legal principle that an heir at law can only be disinherited by express devise or necessary implication: *Bender* v. *Deitrick,* 7 Watts & S. (Pa.)

284, 287. That the testator did not intend to exclude plaintiff's grandchildren from sharing his estate in case of the death of Green C. Love, if they or either survive him, appears to be manifest from a clause of the last will, to wit:

"It was always my purpose to distribute my property equally between my several children and to the heirs of those of my children who had died, leaving children or grandchildren."

Though neither of these great-grandchildren is named in the will or codicil, nor is any provision expressly made for them, we think it is fairly disclosed from the context of the codicil that, if either were living when plaintiff died, such survivor or survivors would take the real property or a part thereof in fee by implication.

9, 10. The term "issue," as used in the codicil, includes, among others, grandchildren (17 Am. & Eng. Enc. Law [2 ed.] 544), and since plaintiff's lawful issue of that degree were *in esse* when the supplemental testament was made, and as he took by the codicil only a life estate in the land, they, as remaindermen, became vested with a fee conditional at the death of the testator subject to such life estate and to the possibility of their interest being diminished by the birth of other issue, and to the remainder over by way of executory devise to the other devisees, in case these grandchildren or any other issue of plaintiff do not survive him (30 Am. & Eng. Enc. Law [2 ed.] 701; *Still* v. *Spear*, 3 Grant, Cas. [Pa.] 306; *Sturges* v. *Cargill*, 1 Sandf. Ch. [N. Y.] 318).

This conclusion, in our opinion, upholds the testator's intention as gathered from the will and codicil when viewed in their entireties where necessary, and considering the supplemental testament as a last will which revokes the prior will in so far as it conflicts therewith. If Lewis Love had designed that the remaining devisees should take as remaindermen, on the termination of plain-

tiff's life estate, and that the lawful issue of the latter
who should be living at his death were to be excluded,
there would have been no need to refer to such con-
tingency; but the allusion to plaintiff's decease under the
condition indicated shows a purpose that such issue, if
surviving, should take the remainder, though not so
expressly stated, and, if plaintiff should die without law-
ful living issue, the remaining devisees are to take the '
lands in fee as an executory devise.

It follows from these considerations that the decree is
reversed, and the suit dismissed.

REVERSED: SUIT DISMISSED.

MR. JUSTICE BURNETT delivered the following dissent-
ing opinion.

I dissent from the opinion of the majority of the court
in this case. All agree that except for the codicil Green
C. Love takes an estate in fee simple. Unless defeated
by the supplementary testament, that estate continues.
As to Mrs. Stafford and Fred D. Love, the testator left
no doubts.. No uncertainty is annexed to the certain
event of the death of either of them. At their death,
whenever that comes, there is the remainder to their
children. But, as affecting the course of descent in the
case of Green C. Love, the certain event of his death
is turned into an uncertainty by the annexation of the
condition that it shall be "without lawful issue born
alive and living at the time of his death." These words
should be considered only as a qualification in favor of
the remaining devisees of the will, for they would have
precisely the same potency in construing that document
if Green C. Love had never married. We cannot say as a
matter of law that the possibility of issue born alive to
Green C. Love by his present wife is extinct. If such a
child should be born and should outlive its father but die
without issue before its mother, she would inherit from it.

The will has not cut off her inheritable quality in such an instance, and why should it in others unless clearly so nominated in the testament? The words relating to the death of Green C. Love without issue are of use only to determine the dilemma of whether the fee goes to him or the "remaining devisees." By a natural construction of its language the third paragraph of the codicil passes the property therein mentioned either to Green C. Love or to those designated therein as remaining devisees. The descendants of Green C. Love are referred to only in the negative. They are not mentioned affirmatively as devisees. The codicil casts no estate upon them. As his kindred existed when he made the will, they are not heirs of the testator, so that they must be named or provided for in his testament. If no such persons exist at the death of Green C. Love, the operation of the will takes the estate, not to their heirs, such as a parent or collateral kindred of the other line, but to the "remaining devisees" of the will. If persons of the issue of Green C. Love are in being at his death, they may inherit from him; but no property will come to them by virtue of this codicil. If all three clauses of the codicil are to be construed alike, the testator would have said: "And that at his death the said devise or legacy shall go to his lawful issue living at the time of his death or if there be no such issue said devise or legacy shall belong and go to the remaining devisees," etc. In respect to the wife of Green C. Love, the only object of the testator was to keep her from inheriting directly from him by virtue of being the widow of his son. The strong desire of the decedent, several times expressed in the will, was to direct his property into the hands of his descendants, not in any unusual proportions, but as the law would otherwise distribute it among those of his blood. The mere incident of possible dower, which is not an estate inherited from any one, would not change the ultimate destination of his

property, viz., the enjoyment of it by the issue of his loins. The words "independent of his wife at all times" may be set down as a negligible factor or as precatory words. They affect nothing. They are as well applicable to a life estate in Green C. Love as to any other that might be cast upon him. Her inheritance would be defeated, not by these words, but by the existence of descendants of her husband living at the time of his death. The objection that she could incumber her husband's fee-simple estate by incurring expenses for the support of the family applies equally well to his supposed life estate, and, besides this, such expenses would be his own liability for which any estate he had in the land would be holden. Section 7039, L. O. L. He could also convey to her his life estate as well as his fee-simple estate.

The problem, then, is to work out a solution of the uncertainty annexed to the certainty of the death of Green C. Love by the words, "lawful issue born alive and living at the time of his death." The context is not silent here, but will aid in solving the problem. The will in question is something more than a mere direction of how the estate shall be distributed, leaving that to be effected as to time automatically, so to speak, by the operations of the probate court. The instrument goes further and creates a trust, appoints trustees, passes the estate to them, and fixes a time certain when their stewardship shall be terminated. To "pass" means, in this connection, to devise. *Gant* v. *Henly,* 64 Mo. 162; *Young* v. *Boardman,* 97 Mo. 181, 185 (10 S. W. 48); *Joyslin's Estate,* 76 Vt. 88 (56 Atl. 281). If this same word "pass" were used alone in a will made directly in favor of any one, it would operate the same as if the word "devise" itself were employed. The estate being devised to the trustees, the *centui que trustent* take, not immediately from the testator, but from the trustees, and must

be bound by the terms of the trust, one of which is that it must be wound up and final distribution made January 1, 1907. It says:

"I direct that my trustees make final distribution of my estate on January 1, 1907."

It was not the intention of the testator to prolong the matter indefinitely. Attention must be given to the word "final." It means a termination and signifies the last beyond which there can be no other. The trustees are required not only to divide, but also to distribute, the property. This depends for fulfillment, not upon some death other than that of the testator, certain enough as to event though uncertain as to date, but upon the time appointed by the will. It is said by appellants' counsel that death alone is no contingency, and that, if the first taker lives beyond the testator, he takes an absolute estate; but, if the death of the taker is coupled with any other contingency, such death means his decease at any time, whether before or after that of the testator. In this case, however, the intervention of the trust estate and the requirement that it come to an end January 1, 1907, operate to fix the time of distribution, making the word "then" in the third clause of the codicil correspond to that date and designating the then living Green C. Love as the devisee rather than the "remaining devisees." The date appointed for final distribution establishes for the contingency of his dying without issue a boundary beyond which it can have no effect. The testator, through his trustees, disposed of all his property to named devisees without prescribing that, in case of the death of either, the descendants of such a one should take that share by right of representation. On the contrary, he says that, if Green C. Love die without issue, his share shall pass to the remaining devisees—that is, to those devisees then surviving—not per capita, but in proportion as they hold the shares he has designated.

Final distribution requires that the estate distributed be certain and not contingent, and that nothing be left for ascertainment. If Green C. Love took only a life estate, the trust was not ripe for final settlement while he lived, for until he died it could not be known who of the devisees remained or survived. Holding only a life estate, if he dies without issue, the trust will have to be reopened and another distribution made among the remaining devisees, whoever they may be. But the date, January 1, 1907, named in the will, puts an end to the process of devolution marked out for his estate by the testator. When that day came, uncertainty vanished. Final distribution was no longer hindered or impeded by the uncertain tenure of Green C. Love's life or want of knowledge of the number and existence of the remaining devisees. The trustees were then bound to distribute finally, once for all, and to whom? The only answer is: To those at that time qualified under the will. If Green C. Love's fee-simple estate declared by the original will was not defeated by his death without issue prior to January 1, 1907; if, on the contrary, he was alive at that time—he was that qualified devisee for one of the six shares to whom the trustees must make final distribution rather than to his alternates, "the remaining devisees of my said will." To hold otherwise would be to keep open indefinitely a trust which the testator directed should be closed at a time certain. He did not leave it to the halting pace of litigation or the slow march of chancery, but, as he had the right to do, prescribed a time when operations under the will should cease and his property should be finally distributed among the ultimate holders. The will itself provides for its own consummation. His directions in that respect are as authoritative as any in that document and should be obeyed. The parties adopted this construction of the will by participation in the distribution which the trustees made as stated in the plead-

ings, and they should not now be heard to question it. They gave practical effect to all the terms of the will so that the property became capable of present use and enjoyment. This result should not now be overturned, for the law does not presume or favor restraints upon alienation.

In brief, the will gave Green C. Love a fee-simple estate. The codicil did not supersede it but only appended the contingency of his death without then living issue. The contingency itself was limited by the appointment of January 1, 1907, as the date of final distribution. The fortuitous events did not occur within the period prescribed for its potency and cannot now or ever disturb the absolute estate to which it was annexed. At best the case falls within the principle that, where an absolute fee is once clearly devised, it cannot be afterward limited or taken away except by equally explicit language. It is true we must have regard to the intention of the testator, but it must be ascertained by a judicial examination of what he has written. Under any view of the case most favorable to the defendants, the obscurity of language in the third clause of the codicil is in such strong contrast to the clear diction of the original will conferring on the plaintiff "the highest estate a man hath in lands" that for this reason, if for no other, the decree of the circuit court should be affirmed. 1 Redfield, Wills, c. 9, § 30; *Holt* v. *Wilson*, 82 Kan. 268 (108 Pac. 87); *McNutt* v. *McComb*, 61 Kan. 25 (58 Pac. 965); *Lonmuller* v. *Mosher*, 74 Kan. 751 (87 Pac. 1140); *Byrnes* v. *Stilwell* 103 N. Y. 453 (9 N. E. 241: 57 Am. Rep. 760); *Wasbon* v. *Cope*, 144 N. Y. 287 (39 N. E. 388); *Fowler* v. *Duhume*, 143 Ind. 248 (42 N. E. 623); *Lambe* v. *Drayton*, 182 Ill. 110 (55 N. E. 189); *Meyer* v. *Weiler*, 121 Iowa 51 (95 N. W. 254); *Brewster* v. *Douglas* (Iowa), 80 N. W. 304; *Roth* v. *Rauchenbusch*, 173 Mo. 582 (73 S. W. 664: 61 L. R. A. 455); *Spencer* v. *Scovel*, 70 Neb.

87 (96 N. W. 1016) ; *McClellan* v. *Mackenzie*, 126 Fed. 701 (61 C. C. A. 619) ; *Yocum* v. *Parker* (C. C.), 130 Fed. 722.